**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

JOHNNIE PARKER, *et al.*,

      Plaintiffs,

    v.

JOHN MORIARTY & ASSOCIATES,

      Defendant/Third Party Plaintiff,

    v.

STRITTMATTER METRO, LLC,

      Third Party Defendant/Fourth Party
      Plaintiff,

    v.

ENVIRONMENTAL CONSULTANTS AND
CONTRACTORS, INC.,

      Fourth Party Defendant.

Civil Action No. 15-1506 (CKK)

**MEMORANDUM OPINION**
(May 23, 2016)

      Plaintiffs Johnnie Parker and Starrelette Gail Jones-Parker bring this action against Defendant/Third Party Plaintiff John Moriarty & Associates of Virginia LLC ("JMAV"). Plaintiffs allege that JMAV, as general contractor of a construction project, was negligent resulting in serious injury to Plaintiff Johnnie Parker, a construction worker on this project site. Defendant JMAV subsequently filed a Third Party Complaint against Third Party Defendant Strittmatter Metro, LLC ("Strittmatter"), and Strittmatter, in turn, filed a Fourth Party Complaint against Fourth Party Defendant Environmental Consultants and Contractors, Inc. Presently before the

Court is Defendant and Third Party Plaintiff JMAV's Motion for Summary Judgment on Count I of its Third Party Complaint against Strittmatter, seeking summary judgment on its contractual indemnification claim against Strittmatter.  Upon consideration of the parties' submissions,[1] the applicable authorities, and the record as a whole, the Court shall DENY Defendant and Third Party Plaintiff JMAV's [28] Motion for Summary Judgment on Count I of its Third Party Complaint for the reasons stated herein.

## I. BACKGROUND

This action arises out of the construction work completed on the Apollo H Street project ("the project"), located at 616 and 630 H Streets, NE, Washington, DC 20002. Def.'s Stmt. of Material Facts Not in Genuine Dispute ("Def.'s Stmt.") ¶ 1, ECF No. [28-2]. Defendant/Third Party Plaintiff JMAV was the general contractor on the project.  *Id.*  On August 12, 2014, JMAV hired Third Party Defendant/Fourth Party Plaintiff Strittmatter as a subcontractor on the project pursuant to the terms of a written Subcontract Agreement. *Id.* ¶ 2.   Under the terms of the Subcontract Agreement, Strittmatter agreed to perform excavation and backfill work on the project. *Id.* ¶ 3.

Plaintiff Johnnie Parker alleges that on December 18, 2014, while he was employed by Strittmatter, he was instructed to excavate between 600 and 624 H Street, NW, as part of his regular duties of employment.  *Id.* ¶¶ 5, 6.  Mr. Parker further alleges that he was injured by exposure to toxic fumes while performing that excavation work. *Id.* ¶ 7.  On September 16, 2015, Mr. Parker

---

[1] While the Court bases its decision on the record as a whole, its consideration has focused on the following documents: Def. & 3d Party Pl.'s Mot. for Summ. J. on Count I of its 3d Party Compl.("Def.'s Mot."), ECF No. [28]; 3d Party Def.'s Opp'n to Def./3d Party Pl.'s Mot. for Partial Summ. J. ("3d Party Def.'s Opp'n"), ECF No. [32]; and Def. & 3d Party Pl.'s Reply Brief in Supp. of its Mot. for Summ. J. on Count I of its 3d Party Compl. ("Def.'s Reply"), ECF No. [33].  The motion is fully briefed and ripe for adjudication. In an exercise of its discretion, the Court finds that holding oral argument would not be of assistance in rendering its decision.  *See* LCvR 7(f).

and his wife, Plaintiff Starrelette Gail Jones-Parker, filed the underlying Complaint in the instant

action with a claim of negligence by and against JMAV, along with a claim for punitive damages

based on JMAV's alleged willful, reckless, and wanton conduct. *Id.* ¶¶ 9, 10; 3d Party Def./4th

Party Pl.'s Stmt. of Undisputed and Disputed Material Facts ("3d Party Def.'s Stmt.") ¶ 9, ECF

No [32-1].   On November 9, 2015, JMAV filed a Third Party Complaint against Strittmatter

alleging claims of contractual indemnification and breach of contact. 3d Party Def.'s Stmt. ¶ 15.

At issue at the present time is the indemnity provision in the Subcontract Agreement between

JMAV and Strittmatter that provides:

> To the fullest extent permitted by the law of the District of Columbia, the
> Subcontractor [Strittmatter] shall indemnify and hold harmless the Owner, the
> Architect and the Contractor [JMAV] and all of their agents and employees from
> and against all claims, damages, losses and expenses, including but not limited to
> attorney's fees, caused by, arising out of, in connection with, or resulting from the
> performance of the Subcontractor's Work under this Subcontract, where any such
> claim, damage, loss or expense is attributable to bodily injury, sickness, disease, or
> death, or to injury to or destruction of tangible property including the loss of use
> resulting therefrom, and is caused by or arises in whole or in part, from any
> negligent or non-negligent act or omission of the Subcontractor or any of its agents,
> employees, sub-subcontractors or others . . . .

Def.'s Stmt. ¶ 4. JMAV now moves for summary judgment on its contractual indemnification

claim against Strittmatter based on Subcontract Agreement.

## II. LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine

dispute as to any material fact and [that it] . . . is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a).  The mere existence of some factual dispute is insufficient on its own to bar summary

judgment; the dispute must pertain to a "material" fact.  *Id.*  Accordingly, "[o]nly disputes over

facts that might affect the outcome of the suit under the governing law will properly preclude the

entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Nor may

summary judgment be avoided based on just any disagreement as to the relevant facts; the dispute must be "genuine," meaning that there must be sufficient admissible evidence for a reasonable trier of fact to find for the non-movant. *Id.*

In order to establish that a fact is or cannot be genuinely disputed, a party must (a) cite to specific parts of the record—including deposition testimony, documentary evidence, affidavits or declarations, or other competent evidence—in support of its position, or (b) demonstrate that the materials relied upon by the opposing party do not actually establish the absence or presence of a genuine dispute. Fed. R. Civ. P. 56(c)(1). Conclusory assertions offered without any factual basis in the record cannot create a genuine dispute sufficient to survive summary judgment. *Ass'n of Flight Attendants-CWA, AFL-CIO v. U.S. Dep't of Transp.*, 564 F.3d 462, 465-66 (D.C. Cir. 2009). Moreover, where "a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," the district court may "consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e).

When faced with a motion for summary judgment, the district court may not make credibility determinations or weigh the evidence; instead, the evidence must be analyzed in the light most favorable to the non-movant, with all justifiable inferences drawn in her favor. *Liberty Lobby*, 477 U.S. at 255.  If material facts are genuinely in dispute, or undisputed facts are susceptible to divergent yet justifiable inferences, summary judgment is inappropriate. *Moore v. Hartman*, 571 F.3d 62, 66 (D.C. Cir. 2009). In the end, the district court's task is to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby*, 477 U.S. at 251-52. In this regard, the non-movant must "do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S.

574, 586 (1986); "[i]f the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted," *Liberty Lobby*, 477 U.S. at 249-50 (internal citations omitted).

## III. DISCUSSION

JMAV contends that the indemnity clause of the Subcontract Agreement is unambiguous as a matter of law and obligates Strittmatter to fully indemnify JMAV as to any claims against JMAV in this action regardless of whether Mr. Parker's injuries arose out of JMAV's own negligence.  Strittmatter argues that pursuant to the Subcontract Agreement, Strittmatter's duty to indemnify JMAV is only triggered for claims arising out of the contracted work when Strittmatter's conduct caused the damages that led to the claim.  As such, Strittmatter argues that JMAV is not entitled to summary judgment at this stage, prior to the completion of discovery, because there remains a genuine dispute over a material fact, namely whether Mr. Parker's damages were caused by or arose out of Strittmatter's conduct.  Accordingly, the issue before the Court is whether the indemnity clause of the Subcontract Agreement is unambiguous such that it obligates Strittmatter to indemnify JMAV regardless of which party, if any, caused Mr. Parker's damages.

The District of Columbia[2] follows the "'objective' law of contracts, which generally means that 'the written language embodying the terms of an agreement will govern the rights and liabilities of the parties, [regardless] of the intent of the parties at the time they entered into the contract, unless the written language is not susceptible of a clear and definite undertaking, or unless there is fraud, duress, or mutual mistake.'" *Armenian Assembly of Am., Inc. v. Cafesjian*, 758 F.3d 265, 278 (D.C. Cir. 2014) (quoting *DSP Venture Grp., Inc. v. Allen*, 830 A.2d 850, 852 (D.C.

---

[2] The Subcontract Agreement provides: "This Subcontract shall be interpreted in accordance with the laws of the District of Columbia, without reference to its choice of law." Def.'s Mot., Ex. B at 13, ECF No. [28-3] (Subcontract Agreement).

2003)). "'The writing must be interpreted as a whole, giving a reasonable, lawful, and effective meaning to all its terms,' and ascertaining the meaning 'in light of all the circumstances surrounding the parties at the time the contract was made.'" *Debnam v. Crane Co.*, 976 A.2d 193, 197 (D.C. 2009) (*1010 Potomac Assocs. v. Grocery Mfrs. of Am., Inc.*, 485 A.2d 199, 205-06 n.7 (D.C. 1984)).

In the District of Columbia, parties are free to enter into indemnification contracts. *W.M. Schlosser Co. v. Maryland Drywall Co.*, 673 A.2d 647, 653 (D.C. 1996). "An indemnity provision, however, 'should not be construed to permit an indemnitee to recover for his [or her] own negligence unless the court is firmly convinced that such an interpretation reflects the intention of the parties.'" *Id.* (quoting *United States v. Seckinger*, 397 U.S. 203, 211 (1970)). "If a party 'expects to shift responsibility for its negligence . . . the mutual intention of the parties to this effect should appear with clarity from the face of the contract.'" *Id.* "The question then is whether [a] contract provision *clearly reflects* such a purpose." *Id.* (emphasis added). "Thus, if the alleged intention to provide this type of protection for the indemnitee is at all ambiguous, this standard is not satisfied." *Rivers & Bryan, Inc. v. HBE Corp.*, 628 A.2d 631, 635 (D.C. 1993).

"A contract is not ambiguous simply because the parties disagree on its interpretation . . . ." *Clayman v. Goodman Properties, Inc.*, 518 F.2d 1026, 1034 (D.C. Cir. 1973). Rather, whether a contract is ambiguous is a question of law to be determined by the court. *Holland v. Hannan*, 456 A.2d 807, 815 (D.C. 1983). "'An ambiguity exists when, to a reasonably prudent person, the language used in the contract is susceptible of more than one meaning[,]' and 'the court determines that proper interpretation of the contract depends upon evidence outside the contract itself,' i.e., 'where its interpretation depends upon the credibility of extrinsic evidence or upon a choice of reasonable inferences from such evidence.'" *Aziken v. District of Columbia*, 70 A.3d 213, 219

(D.C. 2013) (internal citations omitted) (quoting *Nat'l Hous. P'ship v. Mun. Capital Appreciation Partners*, 935 A.2d 300, 310 (D.C. 2007) & *Dodek v. CF 16 Corp.*, 537 A.2d 1086, 1092, 1093 (D.C. 1988)).   As such, "[a]mbiguity exists only if the court determines that the proper interpretation of the contract cannot be derived from the contractual language exclusively, and requires consideration of evidence outside the contract itself."   *Steele Founds., Inc. v. Clark Constr. Group, Inc.*, 937 A.2d 148, 153 (D.C. 2007).   Here, the Court must determine whether the indemnity provision at issue is unambiguous as a matter of law such that it obligates Strittmatter to indemnify JMAV for any claims that Plaintiffs have raised against JMAV.

The parties disagree as to requirements that must be met in order to trigger Strittmatter's indemnification obligation under the language of the contract.   It is undisputed that Mr. Parker has raised a claim for bodily injury, sickness, or disease and that this claim arose out of or in connection with the performance of Strittmatter's work under the Subcontract Agreement.   As such, the parties' dispute centers around the following requirement in the indemnity provision: "[the] claim, damage, loss or expense . . . is caused by or arises in whole or in part, from any negligent or non-negligent act or omission of the Subcontractor [Strittmatter] or any of its agents, employees, sub-subcontractors or others . . . ."   JMAV argues that this requirement is satisfied because the instant claim "arises in whole or in part" from a negligent or non-negligent act of Mr. Parker, a Strittmatter employee.   Def.'s Mot. at 9.   However, Strittmatter contends that this provision creates a separate requirement that the claim arise out of or be caused by *Strittmatter's conduct*, a fact that has not been established at this phase of the proceedings.   3d Party Def.'s Opp'n at 9.   Based on this portion of the clause, Strittmatter argues that it is at most is ambiguous as to whether Strittmatter is obligated to indemnify JMAV for any claims arising out of JMAV's *own negligence.   Id.*   For the reasons described herein, the Court agrees with Strittmatter that the clause is ambiguous as to

whether Strittmatter must indemnify JMAV if JMAV is negligent and, as such, concludes that granting summary judgment in JMAV's favor is inappropriate at this time.

In reaching its conclusion, the Court shall address the relevant cases cited by both parties in support of their positions.  JMAV cites to several cases that it contends support its argument that the indemnity provision is unambiguous as a matter of law.  In *W.M. Schlosser Co. v. Maryland Drywall Co.*, 673 A.2d 647 (D.C. 1996), the District of Columbia Court of Appeals ("D.C. Court of Appeals") held that an indemnity clause that required a subcontractor to indemnify the general contractor "from any and all claims . . . arising out of or resulting from or in connection with the execution of the work provided for in th[e] Agreement," *id.* at 653, was sufficiently comprehensive to include indemnification by the subcontractor for damages resulting from the general contractor's negligence, *id.* at 654.  Similarly, in *Moses-Ecco Co. v. Roscoe-Ajax Corp.*, 320 F.2d 685 (D.C. Cir. 1962), the U.S. Court of Appeals for the District of Columbia Circuit[3] considered an indemnity clause that provided that the subcontractor agreed to indemnify the contractor "against any loss, because of injury or damage to persons or property arising or resulting from the performance of th[e] contract, including any and all loss, cost, damage or expense which . . . the [c]ontractor may sustain or incur on account of any claim, demand or suit made or brought against them or either of them by or on behalf of any employee of [subcontractor]." *Moses-Ecco Co.*, 320 F.2d at 687.  The appellate court held that the indemnification provision at issue required the subcontractor to indemnify claims arising out of the contractor's negligence, noting that it was "difficult to conceive of any phraseology broader" than the language in this provision referencing "all" losses on "any" claim, including those of the subcontractor's own employees.  *Id.* at 688. Finally, in *Princemont Construction Corp. v. Baltimore & O. R. Co.*, 131 A.2d 877 (D.C. 1957),

---

[3] This case remains binding law.  *See M.A.P v. Ryan*, 285 A.2d 310, 312 (D.C. 1971).

the D.C. Court of Appeals similarly held that a provision requiring one party to a contract "[t]o assume all liability for any and all loss and damage to property and claims for injury to or death of persons in connection with or growing out of the use of said premises," was all-embracing and comprehensive such that it encompassed indemnification for damages arising from the other contracting party's own negligence. *Princemont*, 131 A.2d at 878. Indeed, as JMAV points out, it can be discerned from these cases that even without a specific reference to losses incurred by the indemnitee's own negligence, *Moses-Ecco Co.*, 320 F.2d at 688, "the terms of an indemnity agreement may be so broad and comprehensive that although it contains no express stipulation indemnifying against a party's own negligence, it accomplishes the same purpose," *Princemont Constr. Corp.*, 131 A.2d at 878. Moreover, the language in the provision at issue does include some of the broad language referring to "all claims, damages, losses and expenses," similar to the provisions in the cases cited by JMAV.

While the provision at issue does include some broad language regarding indemnity, Strittmatter correctly contends that the indemnity provisions considered in the cases cited by JMAV are materially different from the provision at issue in the instant action because none of the provisions in the cited cases include a "Who" clause. Specifically, unlike in the contract provisions in *Schlosser*, *Moses-Ecco*, and *Princemont* that include broad language that simply references to "any" and/or "all" claims, the provision at issue in the instant case includes a specific reference to one party's conduct, namely Strittmatter's conduct. Indeed, the contract provision in the instant case includes a requirement that the claim must be "caused by or arise[] in whole or in part, from any negligent or non-negligent act or omission of the Subcontractor [Strittmatter] or any of its agents, employees, sub-subcontractors or others . . . ." JMAV in its briefing does cite to an unpublished opinion from the United States Court of Appeals for the Fourth Circuit ("Fourth

Circuit') applying District of Columbia contract law to an indemnity provision that includes a "Who" clause and holding that the language of the agreement unambiguously evidenced the intent to include indemnification even in the case of the indemnitee's own negligence.  The agreement in that case provided, in part, that a security guard service would indemnify Red Roof Inns for any claims arising out of injury to an employee of the security guard service.  The agreement specifically provided that the security guard service's indemnity obligations "extend to any damages resulting from any action or omission of [Red Roof Inns], negligent or otherwise." *Red Roof Inns, Inc. v. Scottsdale Ins. Co.*, 419 Fed. App'x 325, 327 (4th Cir. 2011).  Accordingly, as Strittmatter points out, the Fourth Circuit case is distinguishable from the instant action because the contract in that case expressly provides for recovery even in the event that the cause of action arises out of the indemnitee's actions or omissions.  In contrast, the "Who" clause of the indemnity provision in the instant case references the actions of the indemnitor, Strittmatter, rather than the actions of the indemnitee, JMAV.

Strittmatter cites two cases from the D.C. Court of Appeals, *District of Columbia v. Royal*, 465 A.2d 367 (D.C. 1983) and *Rivers & Bryan, Inc., v. HBE Corporation*, 628 A.2d 631 (D.C. 1993), in support of its argument that the indemnity provision at issue does not unambiguously obligate Strittmatter to indemnify JMAV if JMAV is negligent.  Indeed, both cases cited by Strittmatter are relevant to the Court's analysis in the instant action because both cases involve indemnity provisions with "Who" clauses addressing the conduct of the indemnitor and both support Strittmatter's assertion that its indemnity obligation may not be triggered if JMAV is negligent.

As an initial matter, JMAV asserts that the D.C. Court of Appeals in *N.P.P. Contractors, Inc. v. John Canning & Co.*, 715 A.2d 139 (D.C. 1998), has clarified and rendered moot its earlier

decisions in *Royal* and *Rivers & Bryan*.   Def.'s Reply at 5.   However, a review of *N.P.P.*

*Contractors* demonstrates that the D.C. Court of Appeals in that case simply found the indemnity

provision in that case distinguishable from those in *Royal* and *Rivers & Bryan*, and instead found

*Schlosser* to be controlling based on the language of the particular contract at issue. Nowhere in

the opinion did the D.C. Court of Appeals indicate that its ruling either limited or rendered as moot

its decisions in *Royal* and *Rivers & Bryan*.   Rather, the D.C. Court of Appeals found *Schlosser*

applicable based on the particular facts of that case when, notably, the broad contract provision

did not include a "Who" clause.

As Strittmatter asserts, the indemnity provision in *Royal* is most akin to the provision at

issue in the instant action.   In *Royal*, the D.C. Court of Appeals considered a contract between the

District of Columbia and a contractor to build an elementary school. The indemnity provision of

that contract provided:

> [T]he Contractor . . . shall indemnify and save harmless the District and all of its
> officers, agents and servants against any and all claims or liability *arising from or
> based on, or as a consequence or results of, any act, omission or default of the
> Contractor, his employees, or his subcontractors*, in the performance of, or in
> connection with, any work required, contemplated or performed under the Contract.

*Royal*, 465 A.2d at 368 (emphasis added).   In reviewing the District's indemnity claim, the D.C.

Court of Appeals found that it was not plainly evident from the face of the contract that

responsibility for the District's negligence would shift to the contractor.   *Id.* at 369.   Similar to the

indemnity provision in the contract between JMAV and Strittmatter, the provision in *Royal*

specifically references any claim "arising" from an "act" or "omission" taken by the indemnitor.

Strittmatter also points to the D.C. Court of Appeals' ruling in *Rivers & Bryan*, which the

Court finds instructive.   In that case, the subcontractor agreed to indemnify the contractor for "all

penalties, damages or other loss[es]" arising out of the subcontractor's failure to comply with

federal, state, and/or local laws and ordinances. *Rivers & Bryan, Inc.*, 628 A.2d at 634. The contract also indicated: "Subcontractor is not responsible for others who are not in conformance with OSHA." *Id.* The D.C. Court of Appeals found that provision ambiguous as to whether the parties sought to require the subcontractor to indemnify the contractor when both the parties were found to have violated Occupational Safety and Health Administration ("OSHA") safety regulations. Specifically, the court of appeals found the use of the language indicating that the subcontractor was not responsible for OSHA violations of "others" to be ambiguous as to whether the contractor was included among the "others" referenced. *Id.* at 635. Distinguishing the case from *Moses-Ecco*, the D.C. Court of Appeals found the provision in *Rivers & Bryan* to be more narrow, finding that the former required indemnification for losses resulting from the performance of the contract while the latter provided for losses resulting from the subcontractor's failure to comply with the clause. *Id.* at 636. JMAV argues that this case is not applicable because it deals with the contracting parties' failure to comply with applicable laws, rather than the contracting parties' negligence. While JMAV is correct that *Rivers & Bryan* is not on all fours with the contract at issue in the instant action, the analysis still demonstrates that certain indemnity provisions may be more narrow than those in *Schlosser*, *Moses-Ecco*, and *Princemont*, specifically when they reference one party's conduct.

Based on its review of the cited cases, the Court concludes that the language of the indemnity provision is ambiguous as to whether Strittmatter is obligated to indemnify JMAV for any claims arising out of JMAV's own negligence. Indeed, the Court finds that the provision at issue is distinguishable from those in cases cited by JMAV because it includes a provision specifically requiring that the injury be "caused by or arise[] in whole or in part, from any negligent or non-negligent act or omission of [Strittmatter] or any of its agents, employees, sub-

subcontractors or others." Instead, the Court finds the provision at issue to be most similar to that considered by the D.C. Court of Appeals in *Royal*, where the court found that it was not plainly evident from the face of the contract that responsibility for the indemnitee's negligence would shift to the indemnitor. Here, the Court finds that the language of the contract, including the provision referencing Strittmatter's conduct, does not clearly reflect the parties' intention to obligate Strittmatter for claims caused by or arising out of JMAV's negligence.   As such, the Court concludes that the provision is ambiguous.  Accordingly, the Court shall deny JMAV's request for summary judgment on its contractual indemnification claim against Strittmatter.

JMAV makes two additional arguments based on the language of the provision in support of its argument that the provision is unambiguous that the Court shall address briefly.  First, JMAV contends that the "arising" language "is broad, sweeping, and encompasses injuries to employees on a working site, regardless of the cause of the injury."  Def.'s Reply at 3.  However, JMAV cites only to a case from the U.S. District Court for the Southern District of New York interpreting District of Columbia contract law in support of its argument. *See id.* at 3-4.  In that case, Amtrak and a contractor entered into an agreement that provided for the contractor to indemnify Amtrak, in part, for damages "arising out of or in any degree directly or indirectly caused by or resulting from materials, products or equipment supplied by, or from activities of, or Work performed by Contractor."  *Cevasco v. AMTRAK*, 606 F. Supp. 2d 401, 405 (S.D.N.Y. 2009), *accepted and adopted by* 606 F. Supp. 2d 401, 403-04 (S.D.N.Y. 2009).  The contractor argued that it was not required to indemnify Amtrak for damage incurred to the contractor's trucks when an Amtrak employee lost control of a crane he was operating while working on a different, nearby project. The contractor argued that the damages did not "arise out of" work on the contract project but instead out of Amtrak's work on a wholly unrelated project.  However, the district court rejected

the argument that the language requiring the loss to "aris[e] out of" work performed by the contractor contains an element of causation. *Id.* at 410-11. Rather, the district court concluded that this language simply refers to the scope of employment of the person injured and the site of the injury, but not the cause of the injury. *Id.* at 412. In reaching this holding, the district court relied on D.C. Court of Appeals' holding in *Schlosser* regarding the broad indemnity provision that did not include a "Who" clause and did not discuss the holding in *Royal*. *Id.* at 411 (citing *W.M. Schlosser Co.*, 673 A.2d at 653). Moreover, the district court found that the provision provided for indemnity for both work performed under the contract and work performed by the contractor, finding the two indistinguishable. *Id.* at 413. Here, the indemnity provision requires both that the loss arise out of the Strittmatter's work under the Subcontract Agreement and the loss be "caused by or arise[]" in whole or in part by some negligent or non-negligent act or omission of "the Subcontractor or any of its agents, employees, sub-subcontractors or others." As such, unlike the provision in cited case, the indemnity provision at issue in this case provides both a requirement that the injury arise out of Strittmatter's work under the contract and, separately, that the injury be caused by or arise out of some act or omission of Strittmatter.

Second, JMAV contends that the use of the words "or others" at the end of the clause at issue demonstrates the clear intent of the parties to include JMAV's own negligence within its scope. The Court is not persuaded by this argument. Indeed, the clause at issue references the "Subcontractor or any of its agents, employees, sub-subcontractors or others." To the extent that the parties sought to include JMAV as one of the "others," the parties could have specifically listed JMAV or the "Contractor" as they had done earlier in the same provision. Rather, the text indicates that the parties listed out not just Strittmatter but other entities associated with Strittmatter as evidenced by the use of the word "its," which also modifies "others." As such, the Court concludes

that the use of the word "others" in that provision is at most ambiguous as to whether the parties intended to include JMAV or other entities previously referenced in the agreement, including the Owner or the Architect that are not otherwise among the enumerated entities associated with Strittmatter. *See Rivers & Bryan, Inc.*, 628 A.2d at 635.

In sum, the Court concludes that the contract provision is ambiguous as to whether it obligates Strittmatter to indemnify JMAV should Mr. Parker's alleged injuries have been caused by negligence on JMAV's part, as alleged in the underlying complaint in this matter.  As such, the Court shall deny JMAV's request for summary judgment on Count I of its Third Party Complaint because the Court has determined that JMAV has not established that its interpretation of the indemnity provision of the Subcontract Agreement is correct as a matter of law.

## IV. CONCLUSION

For the foregoing reasons, the Court DENIES Defendant and Third Party Plaintiff JMAV's [28] Motion for Summary Judgment on Count I of its Third Party Complaint.  The Court has determined that summary judgment on JMAV's contractual indemnification claim against Strittmatter is inappropriate at this stage of the proceeding because JMAV has not demonstrated that the provision at issue is unambiguous as a matter of law such that it obligates Strittmatter to indemnify JMAV for any damages recoverable by Plaintiffs in this action.

An appropriate Order accompanies this Memorandum Opinion.

_____
        /s/
COLLEEN KOLLAR-KOTELLY
United States District Judge