**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

JOHNNIE PARKER, *et al.*,

      Plaintiffs,

    v.

JOHN MORIARTY & ASSOCIATES OF
VIRGINIA, LLC,

      Defendant/Third-Party Plaintiff,

    v.

STRITTMATTER METRO, LLC,

      Third-Party Defendant/
      Fourth-Party Plaintiff,

    v.

ENVIRONMENTAL CONSULTANTS AND
CONTRACTORS, INC.,

      Fourth-Party Defendant.

Civil Action No. 15-1506 (CKK)

**MEMORANDUM OPINION**
(September 12, 2018)

On September 16, 2015, Plaintiffs Johnnie Parker and Starrelette Gail Jones-Parker brought this action against Defendant John Moriarty & Associates of Virginia, LLC ("JMAV"). Plaintiffs alleged that JMAV, as general contractor of a construction project, was negligent resulting in serious injury to Mr. Parker, a construction worker on the project site. Defendant JMAV subsequently filed a Third-Party Complaint against Third-Party Defendant Strittmatter Metro, LLC ("Strittmatter"), and Strittmatter, in turn, filed a Fourth-Party Complaint against Fourth-Party Defendant Environmental Consultants and Contractors, Inc. ("ECC"). Subsequent procedural

developments included Plaintiffs' amendment of their Complaint to add ECC as a Defendant. ECC also asserted counterclaims against Strittmatter and cross-claims against JMAV. JMAV in turn asserted cross-claims against ECC.

Presently before the Court are Strittmatter's [121] Motion for Summary Judgment, ECC's [122] Motion for Summary Judgment, and JMAV's [123] Motion for Summary Judgment on Count I and II of Its Amended Third Party Complaint. Upon consideration of the parties' submissions,[1] the applicable authorities, and the record as a whole, the Court shall **GRANT-IN-PART and DENY-IN-PART** Strittmatter's [121] Motion, **DENY** ECC's [122] Motion, and **DENY** JMAV's [123] Motion. Strittmatter's [121] Motion is granted only insofar as it seeks summary judgment as to ECC's counterclaim for contribution.

---

[1] While the Court bases its decision on the record as a whole, its consideration has focused on the following motions and accompanying briefing: Strittmatter's Mot. for Summ. J., ECF No. 121 ("Strittmatter's Mot."); ECC's Opp'n to Strittmatter's Mot. for Summ. J., ECF No. 126 ("ECC's Opp'n to Strittmatter's Mot."); ECC's Resp. to Strittmatter's Statement of Undisputed Material Facts, ECF No. 125; JMAV's Opp'n to Strittmatter's Mot. for Summ. J., ECF No. 128 ("JMAV's Opp'n to Strittmatter's Mot."); Strittmatter's Reply Mem. of P&A in Further Supp. of Its Mot. for Summ. J., ECF No. 133 ("Strittmatter's Reply"); ECC's Mot. for Summ. J., ECF No. 122 ("ECC's Mot."); Strittmatter's Opp'n to Mots. for Summ. J. Filed by Moriarty and ECC, ECF No. 124 ("Strittmatter's Opp'n to JMAV's and ECC's Mots."); Strittmatter's Notice of Filing Corrected Summ. J. Opp'n, ECF No. 131; Pls.' Opp'n to ECC's Mot. for Summ. J., ECF No. 127 ("Pls.' Opp'n to ECC's Mot."); JMAV's Opp'n to ECC's Mot. for Summ. J., ECF No. 129 ("JMAV's Opp'n to ECC's Mot."); ECC's Reply Mem. of Law in Supp. of Its Mot. for Summ. J., ECF No. 132 ("ECC's Reply"); JMAV's Mot. for Summ. J. on Count I and II of Its Am. Third Party Compl., ECF No. 123 ("JMAV's Mot."); JMAV's Mem. in Reply to Strittmatter's Opp'n to JMAV's Mot. for Summ. J., ECF No. 134 ("JMAV's Reply"); and JMAV's Errata to Its Mem. in Reply to Strittmatter's Opp'n to JMAV's Mot. for Summ. J., ECF No. 135. These motions are fully briefed and ripe for adjudication. In an exercise of its discretion, the Court finds that holding oral argument would not be of assistance in rendering its decision. *See* LCvR 7(f).

# I. BACKGROUND

## A. Factual Background and Procedural Posture[2]

This case arises out of the construction work completed on the Apollo H Street Project ("the project"), located between 600 and 624 H Street, NE, Washington, D.C. Am. Compl., ECF No. 87, ¶ 13. The owner of the project, H Street NE Owner, LLC ("Owner"), hired JMAV to serve as general contractor and ECC to provide certain "professional environmental services." *Id.* ¶¶ 3, 6. JMAV subcontracted the excavation and related services to Strittmatter. *Id.* ¶ 5.

Johnnie Parker worked on the project as an employee of Strittmatter and alleges that on December 18, 2014, he was instructed to excavate between 600 and 624 H Street, NE. *Id.* ¶¶ 12, 22. While performing this work, Mr. Parker allegedly was injured upon exposure to toxic chemicals from leaking underground storage tanks. *See id.* ¶¶ 22-31. While Plaintiffs did not allege the specific location onsite where Mr. Parker was injured, the other parties generally agree that it was in the southwestern portion. *See, e.g.*, Strittmatter's Resp. to Statements of Undisputed Material Facts Submitted by JMAV and ECC, ECF No. 124-2, ¶ 37 (Resp. to Moriarity's [sic] Statement of Undisputed Material Facts).

On September 16, 2015, Mr. Parker and his wife, Starrelette Gail Jones-Parker, filed the underlying two-count Complaint against JMAV, claiming that 1) JMAV was liable for negligence, and 2) JMAV's alleged willful, or reckless and wanton, conduct entitled the Parkers to punitive damages. *See* Compl., ECF No. 1, ¶¶ 16-28. On November 6, 2015, JMAV filed a two-count

---

[2] Despite the summary judgment posture at present, the Court shall again generally draw for this brief factual background from Plaintiffs' allegations rather than the parties' various statements of undisputed material facts, in light of the number of such statements and the number of disputes as to purportedly undisputed facts. In any event, the parties generally do not dispute these background facts, and even where they may, the Court's decisions in this Memorandum Opinion do not hinge on any of the background facts cited here.

Third-Party Complaint against Strittmatter, alleging that 1) Strittmatter was contractually obligated to indemnify JMAV, and 2) Strittmatter had breached its subcontract with JMAV. *See* Third-Party Compl., ECF No. 10, ¶¶ 21-33. JMAV sought summary judgment on its contractual indemnity claim against Strittmatter, which the Court denied on May 23, 2016. *See* Mem. Op., *Parker v. John Moriarty & Assocs.* (*Parker I*), 189 F. Supp. 3d 38 (D.D.C. 2016), ECF No. 43.

On May 12, 2016, Strittmatter filed a four-count Fourth-Party Complaint against ECC, asserting claims of 1) negligence, 2) indemnity and/or contribution as a joint tortfeasor, 3) breach of contract to a third-party beneficiary, and 4) negligent misrepresentation. *See* Fourth-Party Compl., ECF No. 38, ¶¶ 40-65. ECC moved to dismiss the Fourth-Party Complaint on the grounds that Strittmatter failed to state claims in contract and in tort upon which relief could be granted, which the Court denied on December 14, 2016. *See* Mem. Op., *Parker v. John Moriarty & Assocs.* (*Parker II*), 224 F. Supp. 3d 1 (D.D.C. 2016), ECF No. 65.

On January 17, 2017, Plaintiffs requested leave to amend their Complaint to assert a negligence claim against ECC, which the Court granted on February 16, 2017. *See* Mem. Op. & Order, *Parker v. John Moriarty & Assocs.* (*Parker III*), 320 F.R.D. 95 (D.D.C. 2017), ECF No. 86; Am. Compl., ECF No. 87.

On February 15, 2017, ECC sought the Court's permission to amend ECC's [71] Answer to assert counterclaims against Strittmatter and cross-claims against JMAV based on allegations of 1) negligence, 2) negligent misrepresentation, and 3) indemnity and contribution. On the same day, JMAV requested leave to amend its [10] Third-Party Complaint against Strittmatter to add further details and a common law indemnity claim. The Court granted ECC's and JMAV's requests on April 6, 2017. *See* Mem. Op. and Order, *Parker v. John Moriarty & Assocs.* (*Parker IV*), 249 F. Supp. 3d 507 (D.D.C. 2017), ECF No. 97; ECC's [Am.] Answer to the Fourth-Party

Compl., Countercl. Against Fourth-Party Pl. Strittmatter and Cross-Cl. Against Def. JMAV, ECF No. 98; JMAV's Am. Third Party Compl. Against Strittmatter, ECF No. 85-2.

The Court instructed JMAV and Strittmatter to respond to the new pleadings that the Court permitted to be filed against them. *Parker IV*, 249 F. Supp. 3d at 516. As part of its response to ECC's cross-claims, JMAV asserted cross-claims against ECC for 1) negligence, 2) indemnity and/or contribution, 3) breach of contract to a third-party beneficiary, and 4) promissory estoppel. JMAV's Answer to ECC's Crosscl. and Crosscl. Against ECC, ECF No. 107. Discovery has since concluded. *See* Oct. 13, 2017 Order, ECF No. 118.

Pursuant to the Court's [120] Scheduling and Procedures Order, three of the four parties have moved for summary judgment as to at least some claims. ECC seeks summary judgment as to each claim against it, specifically Plaintiffs' claim of negligence, JMAV's claims of negligence, indemnity and/or contribution, breach of contract to a third-party beneficiary, and promissory estoppel, and Strittmatter's claims of negligence, indemnity and/or contribution, breach of contract to a third-party beneficiary, and negligent misrepresentation. ECC's Mot. Strittmatter's motion likewise challenges all claims against it, namely JMAV's claims of contractual indemnity, breach of contract, and common law indemnity, and ECC's claims of negligence, negligent misrepresentation, and indemnity and contribution. Strittmatter's Mot. Of the three movants, JMAV seeks the narrowest ruling, asking only for summary judgment on its contractual indemnity and breach of contract claims against Strittmatter. JMAV's Mot. Upon conclusion of briefing, all three motions are ripe for resolution.

## B. Relevant Reports, Agreements, and Safety Plans

The Court shall summarize the reports, agreements, and safety plans that are pertinent to the resolution of the pending motions. This is not the first time that the Court has needed to

consider the intersections of documents at issue in this case. *See, e.g.*, *Parker II*, 224 F. Supp. 3d at 4-6. But, in light of the post-discovery posture, this look will be the most extensive. Notwithstanding that extent, however, the Court's review here shall not decide whether the parties have a dispute of material fact as to such documents, except where the Court expressly indicates that it so decides. The Court shall reserve further analysis of each of these documents for the discussion of the individual claims below.

Taken chronologically, the first key document is ECC's Phase I Environmental Site Assessment, dated March 20, 2014. ECC's Mot., Ex. F, ECF No. 122-6 ("2014 Report").[3] ECC had previously completed other environmental assessments of portions of the same site. *See, e.g.*, 2014 Report at 19-20 (Phase I assessments in 2011 and 2013); *id.* at 49 (2011 Phase II). Recommendations generated previously included "[c]ontinuous observation, field screening, and air monitoring by an environmental professional to identify petroleum-contaminated soil during excavation." *Id.* at 20. The 2014 Report summarizes results of, *inter alia*, ECC's 2014 and prior assessments in both Phases I and II. *See id.* at 19-20, 49, 51. As ECC had reported beforehand, its 2014 Report again identifies certain signs of contaminated soil on site. The 2014 findings include "moderate- to high-level petroleum contamination in soil" in "the vicinity of the former gasoline service station on the southwestern portion" of the project site. *Id.* at 59. ECC bases this conclusion in part on "[m]oderate to high" measurements of volatile organic compound ("VOC") vapors in soil samples from this southwestern portion of the site. *See id.* at 51. ECC attempts to

---

[3] In referring to the 2014 Report and other documents introduced in this Subpart I.B, the Court shall cite to the page numbers automatically generated by ECF in the header of each document. Where multiple versions of a given document appear in the record, the Court shall generally cite the version produced by the entity that generated it or is otherwise party to the document and is party to this lawsuit. In the instance of the JMAV/Strittmatter Agreement, the Court shall cite the version produced by general contractor JMAV.

limit the entities which may rely upon the 2014 Report to an expressly defined set of entities—among which JMAV and Strittmatter do not appear—as well as any others for which ECC provides written authorization. *Id.* at 10. Those entities entitled to rely on the 2014 Report expressly include Insight Apollo LLC, which ECC asserts—and no party disputes—is a member of the Owner. *See, e.g.*, *id.*; ECC's Mot. at 5 (identifying Insight Apollo LLC).

Several agreements follow in close cluster and suggest by their chronological ordering that they were negotiated concurrently. Both these general contractor and excavation subcontractor agreements incorporate ECC's 2014 Report.

The Owner entered into an agreement with JMAV, as general contractor, on September 2, 2014. JMAV's Opp'n to ECC's Mot., Ex. 5, ECF No. 129-6 ("Owner/JMAV Agreement"). JMAV's obligations under the agreement include "design/build responsibility" for "support of excavation." *Id.* at 53. The "Qualifications, Clarifications, and Assumptions" exhibit to the Owner/JMAV Agreement expressly excludes "soil contamination monitoring" and "[s]oil testing," and states that "[c]ontaminated [s]oils are by Owner." *Id.* at 57 (Ex. B). The Owner/JMAV Agreement lists the 2014 Report among "Contract Documents," [4] and states that JMAV is "entitled to rely upon[ ] the written reports and other information provided by the Owner to the Contractor (e.g., the . . . environmental report provided by Owner to the Contractor with respect to the Project)." [5] *Id.* at 37 (Ex. A), 80. Assuming that the Owner provided JMAV with a copy of the

---

[4] Article 16.1.7 of the Owner/JMAV Agreement discusses certain "[a]dditional documents forming part of the Contract Documents." Owner/JMAV Agreement at 17. Documents listed include an Exhibit A entitled "Drawings List and Specifications." *Id.* But Exhibit A itself is instead entitled "Contract Document List." *Id.* at 37. In the absence of any party raising this apparent discrepancy in the title, the Court shall assume that Article 16.1.7 incorporates the Exhibit A that actually appears in the record, notwithstanding the discrepancy in title.

[5] The sentence in the Owner/JMAV Agreement permitting JMAV's reliance on certain documents and information furnished by Owner continues by providing that "in the event that any such information is not accurate and adversely affects the time and/or cost to perform the Work, the

2014 Report listed as a Contract Document, JMAV would be entitled under the Owner/JMAV Agreement to rely upon it, as well as any other ECC safety standards and reports provided by the Owner to JMAV.

JMAV's subcontract signed shortly beforehand also incorporates the 2014 Report. JMAV subcontracted with Strittmatter on August 12, 2014, to cover JMAV's (then-forthcoming) obligations to the Owner for excavation services. *See* JMAV's Mot., Ex. 8, ECF No. 123-10 ("JMAV/Strittmatter Agreement"), at 2-3, 6. Like the Owner/JMAV Agreement, the "Scope of Work" exhibit to the JMAV/Strittmatter Agreement carves out "[s]oil and [m]aterial [t]esting (by Owner)" and "[c]ontaminated soils" from the scope of Strittmatter's responsibility. *Id.* at 28 (Ex. B). The "Contract Document List" exhibit to the JMAV/Strittmatter Agreement lists the 2014 Report. *Id.* at 30 (Ex. C). The Court recognizes Strittmatter's acknowledgement that JMAV provided Strittmatter with a copy of the 2014 Report "[p]rior to December 2014." Strittmatter's Resp. to Statements of Undisputed Material Facts Submitted by JMAV and ECC, ECF No. 124-2, ¶ 23 (Resp. to Moriarity's [sic] Statement of Undisputed Material Facts). The JMAV/Strittmatter Agreement elaborates Strittmatter's safety obligations in an exhibit containing JMAV's Site-Specific Safety and Health Plan ("Site-Specific Plan"). JMAV/Strittmatter Agreement at 45 (Ex. D). While much of the Site-Specific Plan covers project site activities that are not at issue in this

---

Contractor shall be entitled to an equitable adjustment in the Contract Sum and/or Contract Time, as applicable." Owner/JMAV Agreement at 80. ECC argues that this language shows that JMAV should not be permitted to rely on documents and information generated by ECC *with regard to safety*, since that does not relate to the time and cost factors in this second clause. *See* ECC's Reply at 13. However, viewing the evidence in the light most favorable to non-movant JMAV, the first clause can be read to permit reliance independently of whether it has any effect on time or cost. The Court shall discuss in further detail below why summary judgment is precluded as to ECC's motion.

case, some of it is dedicated to excavation activities or sets forth generally applicable safety protocol. *See, e.g.*, *id.* at 98-99 (specific to excavation and trenching).

In between the conclusion of the JMAV/Strittmatter Agreement on August 12, 2014, and the Owner/JMAV Agreement on September 2, 2014, ECC produced its Voluntary Remediation Action Plan ("VRAP") on August 22, 2014. ECC's Mot., Ex. N, ECF No. 122-14 ("VRAP"). The cover page indicates that the VRAP was "[p]repared for" the Owner and "[s]ubmitted to" several District of Columbia officials. *Id.* at 1. The document further explains that ECC prepared the VRAP "to address documented petroleum hydrocarbon contamination at two sites currently enrolled in" a remediation program run by the local government. *Id.* at 5. Among the purposes of the "voluntary remediation actions described in this Plan" is to "ensure the health and safety of future residents, construction workers, and area residents during construction." *Id.* at 5-6. The VRAP draws on the 2014 Report among its sources of data. *Id.* at 6. "The remediation actions proposed [in the VRAP] include . . . [p]reparation of a site specific Environmental Health and Safety Plan (EHASP) for all excavation . . . activities. This will include on-site air monitoring for construction workers . . . ." *Id.* at 18.

As contemplated by the VRAP, ECC's Environmental Health and Safety and Impacted Material Management Plan ("EHASP") also appears in the record, as a revised version dated September 8, 2014. ECC's Mot., Ex. M, ECF No. 122-13 ("EHASP"). The EHASP likewise indicates that it was prepared for the Owner and submitted to District of Columbia officials, and that it draws on the 2014 Report. *Id.* at 1, 6-7. A "Review and Approval" page indicates that the EHASP "has been reviewed by the undersigned representatives of the Owner, Environmental

Consultant and companies performing earthwork, excavation, [and other] activities" on site. *Id.* at 3. This copy of the EHASP has been signed only by an ECC representative.[6]

The EHASP sets forth in some detail the safety responsibilities of parties at the project site, including ECC, the general contractor (i.e., JMAV), and subcontractors (e.g., Strittmatter).[7] Among its obligations, "ECC [was] responsible for monitoring site conditions in regard to chemical hazards during earthwork activities, notifying the General Contractor and subcontractors regarding potential chemical health hazards, and appropriate control measures to be used by personnel at the site." *Id.* at 7. ECC undertook more specifically that, "[o]n a daily basis, ECC will monitor soil excavation and site work for airborne VOC contamination using a Photoionization Detector (PID) . . . . An Environmental Technician will use a portable PID to monitor air near excavated soil as work progresses." *Id.* at 19. ECC's other roles included evaluation of hazards and the authority to "stop[ ] work temporarily, if deemed necessary in the judgment of the Environmental Technician," pending appropriate contact with the general

---

[6] Previously the Court did not draw this distinction regarding signatories when it observed that "[t]he EHASP was prepared by ECC and reviewed and approved by companies performing work on the site, including Strittmatter as a subcontractor completing excavation work." *Parker II*, 224 F. Supp. 3d at 6 (citing EHASP at 3). For the avoidance of doubt, neither JMAV nor Strittmatter has signed this copy of the EHASP.

[7] There is some dispute over ambiguity in the EHASP's definition of the terms "General Contractor" and "Contractor." *See, e.g.*, EHASP at 6 (defining "General Contractor, Contractor" as "[t]he Contractor or General Contractor leading any element of the remediation work set forth herein, *or* a designated representative (*including subcontractors for trades such as excavation* and dewatering" (emphasis added)); JMAV's Resp. to ECC's Statement of Undisputed Material Facts, ECF No. 129-1, ¶ 36 (disputing that the definition of "General Contractor" refers to JMAV); *Parker II*, 224 F. Supp. 3d at 9 (deeming "General Contractor" as "defined as JMAV and subcontractors"). Notwithstanding its prior ruling interpreting the term General Contractor to include subcontractors, the Court now observes that the remainder of the EHASP generally uses the terms with greater clarity than in the definition. *See, e.g.*, EHASP at 7 (describing an obligation of ECC to separately "notify[ ] the General Contractor and subcontractors" in certain circumstances). Accordingly, for purposes of the present decision, the Court considers the EHASP's references to the General Contractor to refer only to JMAV.

contractor's Site Safety Officer. *Id.* at 20-21; *see also id.* at 6 (defining Site Safety Officer). ECC also developed the initial recommendation for personal protective equipment and indicated that it would "reevaluate the potential hazard" "[i]f contaminated soil . . . is encountered." *Id.* at 22, 24. That reevaluation could trigger a recommendation that workers use a certain type of respirator. *Id.* at 24.

Under the EHASP, JMAV's obligations as general contractor entail "overall responsibility for monitoring and enforcing all aspects of site safety, including construction safety and all other safety, health, and OSHA related requirements." *Id.* at 7. JMAV's Site Safety Officer "is responsible for monitoring excavations and worker entries into excavations for safe conditions in compliance with the General Contractor Health and Safety Plan for the site. Upon request of the Site Safety Officer, the Environmental Technician will monitor excavations with a combustible gas/oxygen meter." *Id.* at 19. The EHASP accords "stop-work authority" to the Site Safety Officer in keeping with that officer's duty to ensure compliance with "environmental, health, and safety guidance and regulations at the site." *Id.* at 20; *see also id.* at 23.

JMAV and Strittmatter have obligations as "contractors [and] subcontractors" to "read this EHASP in its entirety and 'sign-off' to acknowledge their understanding of site conditions and hazards, and safety protocol prior to entry to the exclusion zone." *Id.* at 20.[8] "It is the responsibility of the General Contractor and individual subcontractors to make provisions for health and safety training, material safety data sheets, health and safety operating procedures, personal protective equipment, and safety equipment and medical surveillance for their employees at this site." *Id.* at 22. "[I]ndividual contractors [also must] . . . provide the necessary training and

---

[8] The EHASP requires the demarcation of an exclusion zone in the event of encounter with "soil . . . conditions . . . which require personal protective equipment." EHASP at 20.

review for personnel who may be exposed to hazardous material prior to initiation of field activities." *Id.*

To name a few more cross-cutting obligations under the EHASP, "[t]he Site Safety Officer and the Environmental Technician will monitor soil excavation activities." *Id.* at 20. "Care should be taken by all site personnel during excavation operations to avoid possible chemical and physical hazards." *Id.* at 23.

Last in time among the key documents is the agreement between the Owner and ECC entered into on November 1, 2014. ECC's Mot., Ex. B, ECF No. 122-2 ("Owner/ECC Agreement"). ECC commits in the "Scope of Services" exhibit to "implement the [V]RAP for the Project" and "provide Environmental Oversight services as detailed in [ECC's EHASP] for the Project, dated August 22, 2014," "includ[ing] implementation of EHASP." *Id.* at 11 (Ex. A).[9]

## II. LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The mere existence of *some* factual dispute is insufficient on its own to bar summary judgment; the dispute must pertain to a "material" fact. *Id.* Accordingly, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Nor may summary judgment be avoided based on just any disagreement as to the relevant facts; the dispute must be "genuine," meaning that there must be sufficient admissible evidence for a reasonable trier of fact to find for the non-movant. *Id.*

---

[9] None of the parties has raised an issue with the discrepancy between the August 22, 2014, version of the EHASP referenced in the Owner/ECC Agreement, and the revised version dated September 8, 2014, that appears in the record. For purposes of the pending motions, the Court shall assume that there is no material difference between these versions.

In order to establish that a fact is or cannot be genuinely disputed, a party must (a) cite to specific parts of the record—including deposition testimony, documentary evidence, affidavits or declarations, or other competent evidence—in support of its position, or (b) demonstrate that the materials relied upon by the opposing party do not actually establish the absence or presence of a genuine dispute. Fed. R. Civ. P. 56(c)(1). Conclusory assertions offered without any factual basis in the record cannot create a genuine dispute sufficient to survive summary judgment. *See Ass'n of Flight Attendants-CWA, AFL-CIO v. U.S. Dep't of Transp.*, 564 F.3d 462, 465-66 (D.C. Cir. 2009). Moreover, where "a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," the district court may "consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e).

When faced with a motion for summary judgment, the district court may not assess credibility or weigh evidence; instead, the evidence must be analyzed in the light most favorable to the non-movant, with "all justifiable inferences . . . drawn in his favor." *Anderson*, 477 U.S. at 255. "Furthermore, in ruling on cross-motions for summary judgment, the court shall grant summary judgment only if one of the moving parties is entitled to judgment as a matter of law upon material facts that are not genuinely disputed." *Footbridge Ltd. Tr. v. Zhang*, 584 F. Supp. 2d 150, 158 (D.D.C. 2008) (Kollar-Kotelly, J.) (citing *Rhoads v. McFerran*, 517 F.2d 66, 67 (2d Cir. 1975) (per curiam); *Long v. Gaines*, 167 F. Supp. 2d 75, 85 (D.D.C. 2001)). "If material facts are at issue, or though undisputed, are susceptible to divergent inferences, summary judgment is not available." *Moore v. Hartman*, 571 F.3d 62, 66 (D.C. Cir. 2009) (quoting *Kuo-Yun Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994)) (internal quotation marks omitted). In the end, the district court's task is to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. In this regard, the non-movant must "do more than simply show that

there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50.

## III. DISCUSSION

Whether grounded in common law or contract, the causes of action at issue in these motions generally turn on an assessment of the parties' respective duties regarding worker safety on the project site. Those duties arise, if at all, from the intricate web of reports, agreements, and safety standards that involved the parties. Viewing the record evidence in the light most favorable to the non-movants, the Court finds genuine disputes of material fact as to the precise application of duties that these documents appear to create. The parties' divergent interpretations of these documents, coupled with differing accounts of the parties' practices at the project site, preclude the entry of summary judgment with respect to each claim except for ECC's counterclaim against Strittmatter for contribution. The Court shall grant summary judgment to Strittmatter on that counterclaim.

The Court shall discuss further as to each motion in turn, beginning with ECC's motion and continuing with Strittmatter's and then JMAV's. Because the Court is not the finder of fact as to at least some of the claims, the Court shall not touch on all of the parties' various relevant duties, nor shall it belabor its several explanations of genuine disputes of material fact.

### A. ECC's Motion for Summary Judgment

ECC seeks summary judgment on all claims against it, namely negligence (alleged by Plaintiffs, JMAV, and Strittmatter), negligent misrepresentation (Strittmatter), breach of contract (JMAV and Strittmatter), promissory estoppel (JMAV), and common law indemnity and contribution (JMAV and Strittmatter). The Court shall explain why summary judgment is not available to ECC as to any of these claims.

14

*1. Negligence and Negligent Misrepresentation Claims*

ECC argues that it did not owe any duties under tort law that could sustain a negligence claim by the Plaintiffs, JMAV, or Strittmatter, or a negligent misrepresentation claim by Strittmatter. ECC's Mot. at 17, 22 n.2. Previously, the Court denied ECC's motion to dismiss because, as to Strittmatter's negligence and negligent misrepresentation claims, the Court could not "conclusively find that no such duty exists," in light of the Owner/ECC Agreement, the VRAP, and the EHASP, as well as applicable law. *See Parker II*, 224 F. Supp. 3d at 10-11. The Court now finds that ECC has not carried its burden at this stage either, whether as to Strittmatter or to Plaintiffs and JMAV.

In the District of Columbia,[10] "[i]t is a familiar principle that a person is liable to another in negligence only if it can be shown that (1) the defendant owed a duty of care to the plaintiff, (2) the defendant breached that duty, and (3) the breach of duty proximately caused damage to the plaintiff." *Haynesworth v. D.H. Stevens Co.*, 645 A.2d 1095, 1097-98 (D.C. 1994); *see also Parker II*, 224 F. Supp. 3d at 8 (citing *Presley v. Commercial Moving & Rigging, Inc.*, 25 A.3d 873, 880 (D.C. 2011)). A legal duty to a third party lacking contractual privity "arises when a party undertakes to 'render services to another which he should recognize as necessary for the protection of a third person or his things.'" *Presley*, 25 A.3d at 888-89 (quoting *Haynesworth*, 645 A.2d at 1097) (alterations omitted). Under a standard developed by the Restatement (Second) of Torts,

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if

---

[10] None of the parties has raised a choice-of-law issue in briefing any of the pending motions. Because litigants may waive choice-of-law issues, the Court need not challenge their evident assumption that District of Columbia law applies. *See Plesha v. Ferguson*, 725 F. Supp. 2d 106, 111 n.2 (D.D.C. 2010) (Kollar-Kotelly, J.). Where relevant to the analysis, the Court shall refer to choice-of-law provisions in the respective agreements.

(a) his failure to exercise reasonable care increases the risk of such harm, or

(b) he has undertaken to perform a duty owed by the other to the third person, or

(c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

*Id.* at 889 (quoting Restatement (Second) of Torts § 324A (Am. Law Inst. 1965)). While the District of Columbia Court of Appeals has not "formally adopted" the Second Restatement, that court has found that the "particular concept" embodied by Section 324A is among those that are "well known and [have] been readily applied, where appropriate." *Haynesworth*, 645 A.2d at 1097 (citing *Long v. District of Columbia*, 820 F.2d 409, 419 (D.C. Cir. 1987)).

In *Presley*, the District of Columbia Court of Appeals found that a consultant need *not* have foreseen that its services were necessary for the protection of a worker injured on a construction site. *See* 25 A.3d at 889-90. Among other reasons, the "contract compliance consultant" was required to perform only "non-exhaustive and occasional inspections"; was not contractually obligated to be at the project site each day; and was not expected under its contract with the project's principal "to supplant the obligations of . . . [the] general contractor, and the other contractors that had operational charge of construction," although the consultant did have limited stop-work authority. *Id.* at 879, 889-91. In contrast, the U.S. Court of Appeals for the District of Columbia Circuit ("D.C. Circuit") has found that a consultant's "superior skills and position" and "resultant ability to foresee the harm that might reasonably be expected to befall" a worker at a construction site created a duty of care to that worker where the consultant had contractual safety obligations, was aware of health hazards, and had some stop-work authority. *Caldwell v. Bechtel, Inc.*, 631 F.2d 989, 996-97, 1000-02 (D.C. Cir. 1980); *see also Parker II*, 224 F. Supp. 3d at 11 (citing *Caldwell*, 631 F.2d at 997, 1002-03).

Viewing the record evidence in the light most favorable to the non-movants, the Court cannot conclude that ECC lacked a duty of care to the other parties at the project site. The finder of fact could determine, based on the Owner/ECC Agreement, that ECC was hired for an implementation role. *See* Owner/ECC Agreement at 11. ECC was required to implement two documents—namely the VRAP and the EHASP—that ECC itself had developed for the site based on its findings in the 2014 Report. *See id.* The VRAP refers repeatedly to the need to protect construction workers. VRAP at 5-6, 18. The EHASP in turn indicates that ECC's responsibilities include monitoring excavation for VOC vapors "daily" and "as work progresses." EHASP at 19. This would seem to exceed the *ad hoc* monitoring evidently expected of the consultant in *Presley*. Moreover, while JMAV and Strittmatter also had obligations under the EHASP, it appears that only ECC is expected to use a PID to monitor the air. *See id.*; Dep. of Tom Hardy at 95:12-15, Pls.' Ex. 1, ECF No. 127-2 (indicating belief of ECC's corporate designee that "ECC was the only professional entity at the construction site engaged in doing air monitoring"). And ECC had the stop-work authority to act in emergency situations. *See* EHASP at 20-21. ECC's knowledge and implementation obligations, including its daily monitoring role coupled with some stop-work authority, suggest that ECC is more similar to the consultant in *Caldwell*. ECC may be right that its safety obligations fall somewhere short of those in *Caldwell*, which includes a fuller description of those duties than the Court has briefly summarized above. *See* ECC's Reply at 3-6 (citing *Caldwell*, 631 F.2d at 1001-02). But the Court need not make that determination, as the Court is satisfied that summary judgment for ECC is not warranted.

The finder of fact could conclude that ECC should have foreseen the necessity of its services for the protection of others, at the least because ECC's failure to exercise reasonable care in its monitoring could increase the risk of harm to construction workers like Mr. Parker, and

JMAV and Strittmatter might have relied on ECC for adequate air monitoring while Mr. Parker excavated. ECC has not discharged its burden to establish that there is no dispute of material fact, and that it is entitled to judgment as a matter of law, based on its assertion that it had no duty of care to the other parties at the job site.

ECC's effort to dispose of Strittmatter's negligent misrepresentation claim fails for the same reason.

> Under District of Columbia law, a plaintiff alleging negligent misrepresentations or omissions must show (1) the defendant made a false statement or omission of a fact, (2) the statement or omission was in violation of a duty to exercise reasonable care, (3) the false statement or omission involved a material issue, and (4) the plaintiffs reasonably and to their detriment relied on the false information.

*Regan v. Spicer HB, LLC*, 134 F. Supp. 3d 21, 37-38 (D.D.C. 2015) (Kollar-Kotelly, J.) (citing *Sundberg v. TTR Realty, LLC*, 109 A.3d 1123, 1131 (D.C. 2015)). ECC's argument on this issue is limited to a footnote in which ECC asserts that this claim—like Strittmatter's negligence claim—founders for lack of a duty "regarding the safety of Strittmatter's own workers." ECC's Mot. at 22 n.2. But, as the Court determined above, ECC is unable to persuade the Court that it lacked a duty of care to Strittmatter. Accordingly, ECC has not discharged its burden to prove that it is entitled to summary judgment as to this claim either.

### 2. Breach of Contract Claims

As it did in opposing Strittmatter's motion to dismiss, ECC again argues that Strittmatter, and now JMAV as well, are only incidental third-party beneficiaries of the Owner/ECC Agreement, rather than intended third-party beneficiaries who could pursue damages for breach thereof. *See* ECC's Mot. at 22. The Court denied ECC's motion to dismiss because the evidence at that stage was "in equipoise" as to Strittmatter's status. *Parker II*, 224 F. Supp. 3d at 15. Determining whether JMAV and Strittmatter are intended third-party beneficiaries is a "mixed

question of law and fact." *Silberberg v. Becker*, No. 16-cv-624, 2018 WL 3908667, at *8 (D.C. Aug. 16, 2018). Now that the factual record has been developed, ECC is still unable to prevail, as genuine disputes of material fact remain regarding ECC's and the Owner's intent to benefit JMAV and Strittmatter.

"Generally, a stranger to a contract may not bring a claim on the contract." *Fort Lincoln Civic Ass'n, Inc. v. Fort Lincoln New Town Corp.*, 944 A.2d 1055, 1064 (D.C. 2008). However, courts in this jurisdiction have recognized that a party may be entitled to sue as a third-party beneficiary even though the party is not in direct privity of contract. *Silberberg*, No. 16-cv-624, 2018 WL 3908667, at *4 (citing *Fort Lincoln Civic Ass'n, Inc.*, 944 A. 2d at 1064). "Third-party beneficiary status requires that the contracting parties had an express or implied intention to benefit directly the party claiming such status." *Id.* (quoting *Fort Lincoln Civic Ass'n, Inc.*, 944 A. 2d at 1064) (internal quotation marks omitted). The D.C. Court of Appeals has adopted the approach from the Restatement (Second) of Contracts and recognized the distinction between an *intended* beneficiary, one who has rights to recover under a contract claim, and an *incidental* beneficiary, one who does not have such rights. *Fort Lincoln Civic Ass'n, Inc.*, 944 A. 2d at 1064.[11] "An incidental beneficiary is a person who will be benefited by performance of a promise but who is neither a promisee nor an intended beneficiary." *Id.* at 1064-65 (quoting Restatement (Second) of Contracts § 315 cmt. (a) (Am. Law Inst. 1981) (internal quotation marks omitted). The D.C. Court of Appeals has recognized the circumstances under which an entity may be considered an intended beneficiary:

> (1) Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either

---

[11] The Owner/ECC Agreement provides that it "shall be governed by the law of the District of Columbia." Owner/ECC Agreement at 8 (Art. 10(f)).

> (a) the performance of the promise will satisfy an obligation to pay money to the beneficiary; or

> (b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.

*Id.* at 1064 (quoting Restatement (Second) of Contracts § 302(1)) (internal quotation marks omitted). Recently, the D.C. Court of Appeals put the standard more pointedly: "To be intended, a beneficiary need not be named in the contract, *as long as he or she is ascertainable from the contract and the circumstances of the contract.*" *Silberberg*, No. 16-cv-624, 2018 WL 3908667, at *4 (quoting *Hossain v. JMU Props., LLC*, 147 A.3d 816, 820 (D.C. 2016)) (emphasis added) (internal quotation marks omitted). An intended beneficiary has a right to enforce the duties of the promisor to the promisee under the contract. *See Fort Lincoln Civic Ass'n, Inc.*, 944 A. 2d at 1064 (citing Restatement (Second) of Contracts § 304).

Instead of focusing on this District of Columbia authority,[12] ECC inexplicably cites the standard articulated by federal district courts in New York, in a case where the court expressly stated that it was applying New York law. *See* ECC's Mot. at 23 (citing, e.g, *Maricultura del Norte v. Worldbusiness Capital, Inc.*, No. 14 Civ. 10143 (CM), 2017 WL 4334005, at *12 (S.D.N.Y. Apr. 5, 2017)); *see also Maricultura del Norte*, No. 14 Civ. 10143 (CM), 2017 WL 4334005, at *11 (New York law). Nor has ECC given any reason for drawing this and most of its other authority from outside of this Circuit. Moreover, ECC misleadingly quotes only a portion of two sentences from a Maryland federal court decision that show, in their entirety, that the fact that a third party is named in an agreement is *not* itself a "crucial fact" in that jurisdiction, but is

---

[12] The Court cannot, of course, fault ECC for not citing *Silberberg*, as that case was decided after briefing concluded. But *Silberberg* breaks little new ground in comparison with *Fort Lincoln Civic Ass'n, Inc.*, with which ECC spends little time. *See* ECC's Mot. at 22-23.

instead something "[a] court may also consider."  ECC Mot. at 24; *United States ex rel. Potomac Valley Brick & Supply Co. v. Grahams Constr., Inc.*, Civil No. MAB 13-cv-2032, 2014 WL 11955407, at *10 (D. Md. May 13, 2014), *aff'd*, 585 F. App'x 173 (4th Cir. 2014) (Mem.).  Finally, ECC's attempt to urge the Court to follow the Fourth Circuit's decision applying Virginia law in *BIS Computer Solutions, Inc. v. City of Richmond, VA*, 122 F. App'x 608 (4th Cir. 2005), is unpersuasive.  The construction contract analogy relied on in that case suggests that subcontractors (e.g., Strittmatter) are incidental beneficiaries to agreements between principals (Owner) and general contractors (JMAV), but does not suggest how third parties (e.g., JMAV and Strittmatter) to environmental oversight contracts between the principal (Owner) and a consultant (ECC) responsible for implementation should be treated.  *See BIS Computer Solutions, Inc.*, 122 F. App'x at 612 (citing, e.g., Restatement (Second) of Contracts § 302).

As articulated above, on-point authority is available in this jurisdiction.  ECC does cite to one controlling authority that, at least superficially, runs in its favor.  *See* ECC's Reply at 9-10 n.6 (citing *Presley*, 25 A.3d at 888 n.14).  In a footnote in *Presley*, the D.C. Court of Appeals determined that a general contractor and subcontractors were not third-party beneficiaries to an agreement between the principal and a contract compliance consultant at a project site.  25 A.3d at 888 n.14.  The court recognized that they were not named as third-party beneficiaries in the relevant contract.  *Id.*  And the Court suggested that they had only "an indirect interest in the performance of the undertakings."  *Id.* (quoting *Fort Lincoln Civic Ass'n, Inc.*, 944 A. 2d at 1064) (internal quotation marks and alteration omitted).  But for the following reasons, this Court shall find that the fact that JMAV and Strittmatter are not expressly named as third-party beneficiaries in the Owner/ECC Agreement does not preclude them from breach of contract claims where the finder of fact could determine that they had a substantial interest in the performance of the

undertakings and might otherwise meet the standards in this jurisdiction for intended third-party beneficiaries.

As the Court previously has recognized, the Owner/ECC Agreement does not refer to Strittmatter by name, but the Court has found other factors that could indicate the contracting parties' intent to benefit Strittmatter. *Parker II*, 224 F. Supp. 3d at 15 (referring, for example, to ECC's obligations under Agreement to provide environmental oversight, VRAP's stated intention of protecting construction workers, and EHASP's provision for ECC safety monitoring). Furthermore, the Agreement obligates ECC to coordinate with the Owner's "Contractor." Owner/ECC Agreement at 2 (Art. 1(f)) ("[N]othing herein is intended to relieve Consultant of its obligation to coordinate its Services with the services performed by the Owner's Contractor, consultants and design professionals."). Without the benefit of further definition in the Owner/ECC Agreement, the finder of fact could construe "Contractor" as JMAV and possibly also as Strittmatter, for Strittmatter assumed JMAV's obligations to the Owner with respect to excavation. The Agreement also contemplates that other parties on the project site may want to rely on ECC's "reports . . . and any other information generated by [ECC] for the Project," which reliance the Agreement prohibits "without the prior written consent of Owner." *Id.* art. 3(e). Moreover, the Owner/ECC Agreement does not contain any provision that prohibits any non-party from suing for breach of this contract. *See, e.g.*, *Silberberg*, No. 16-cv-624, 2018 WL 3908667, at *7 (determining that absence of such language supports finding that third-party beneficiary was intended).

Viewed in the light most favorable to JMAV and Strittmatter, the Owner/ECC Agreement recognizes that any party receiving the Owner's prior written consent is entitled to rely on information originally generated by ECC, and accordingly the Owner, as promisee, "intends to

give [that] beneficiary the benefit of [ECC's] promised performance." *Fort Lincoln Civic Ass'n, Inc.*, 944 A. 2d at 1064 (quoting Restatement (Second) of Contracts § 302(1)(b)) (internal quotation marks omitted). The finder of fact could determine that the Owner/JMAV Agreement is one such instance of the Owner's prior written consent to rely on information that ECC generated for the project. The Owner/JMAV Agreement expressly incorporates ECC's 2014 Report—upon which ECC expressly allowed one of the member entities of Owner to rely—and permits JMAV to rely on any environmental reports and other information that the Owner furnishes. Owner/JMAV Agreement at 37 (Ex. A), 80; *see also* 2014 Report at 10 (permitting reliance by Insight Apollo LLC). ECC admits that it provided its daily reports to JMAV when the Owner so requested; whether that request was in writing is not clear from the record. *See* ECC's Mot. at 4 (Statement of Undisputed Material Facts ¶ 9); Dep. of John Diehl at 70:7-19, ECC's Ex. C, ECF No. 122-3. The JMAV/Strittmatter Agreement also references the 2014 Report. JMAV/Strittmatter Agreement at 30 (Ex. C). The 2014 Report calls for "[c]ontinuous observation, field screening, and air monitoring by an environmental professional to identify petroleum-contaminated soil during excavation." 2014 Report at 20. The finder of fact could determine that JMAV and Strittmatter expected ECC, as the environmental professional on site, to engage in the continuous air monitoring that it had contemplated. That expectation would be all the more reasonable because the Owner/JMAV and, in turn, JMAV/Strittmatter agreements expressly carve out relevant environmental obligations. *See* Owner/JMAV Agreement at 57 (Ex. B) (e.g., "soil contamination monitoring"); JMAV Strittmatter Agreement at 28 (Ex. B) (e.g., "[s]oil and [m]aterial [t]esting (by Owner)"). It is up to the finder of fact to determine whether those carve outs include monitoring air near soil for VOCs, but the contractual language could support that inference.

There is sufficient evidence in the record to create, at the least, a genuine dispute of material fact as to whether JMAV and Strittmatter were intended beneficiaries of the Owner/ECC Agreement. The finder of fact could determine both that "recognition of a right to performance in the beneficiary [i.e., JMAV and Strittmatter] is appropriate to effectuate the intention of the parties [i.e., Owner and ECC]," and that "circumstances indicate that the promisee [i.e., Owner] intend[ed] to give the beneficiary the benefit of the promised performance." *Fort Lincoln Civic Ass'n, Inc.*, 944 A. 2d (quoting Restatement (Second) of Contracts § 302(1)). That finder of fact also could determine that JMAV and Strittmatter are "ascertainable from the contract [i.e., the Owner/ECC Agreement] and the circumstances of the contract." *Silberberg*, No. 16-cv-624, 2018 WL 3908667, at *4 (quoting *Hossain*, 147 A.3d at 820) (internal quotation marks omitted). Accordingly, summary judgment is not available to ECC as to JMAV's and Strittmatter's breach of contract claims.

### 3. *Promissory Estoppel Claim*

ECC also challenges JMAV's promissory estoppel claim. "In order to find a party liable on a theory of promissory estoppel, there must be evidence of a promise, the promise must reasonably induce reliance upon it, and the promise must be relied upon to the detriment of the promisee." *Plesha*, 725 F. Supp. 2d at 111-12 (quoting *Simard v. Resolution Trust Corp.*, 639 A.2d 540, 552 (D.C. 1994)) (internal quotation marks omitted). "District of Columbia courts generally prohibit litigants from asserting [promissory estoppel] when there is an express contract that governs the parties' conduct." *Id.* at 112 (citing *Vila v. Inter-Am. Inv. Corp.*, 570 F.3d 274, 279 (D.C. Cir. 2009); *Bloomgarden v. Coyer*, 479 F.2d 201, 210 (D.C. Cir. 1973)). When there is no such express contract, the court considers whether there is a "definite" promise, "as reliance on

an indefinite promise is not reasonable." *Greggs v. Autism Speaks, Inc.*, 987 F. Supp. 2d 51, 55 (D.D.C. 2014) (citing *Granfield v. Catholic Univ. of Am.*, 530 F.2d 1035, 1040 (D.C. Cir. 1976)).

At the threshold, the Court rejects ECC's attempt to argue that promissory estoppel is unavailable based on language in the Owner/JMAV Agreement and EHASP. *See* ECC's Reply at 14 (citing *D.C. Oil, Inc. v. ExxonMobil Oil Corp.*, 746 F. Supp. 2d 152 (D.D.C. 2010)). *D.C. Oil* does not support that argument. In that case, the court granted dismissal of a promissory estoppel claim where the parties' relationship was governed by a contract between those litigants. *See D.C. Oil, Inc.*, 746 F. Supp. 2d at 158-59. The appropriate consideration in this case is accordingly whether there is a contract between JMAV and ECC. It is undisputed that there is no such contract. The Court shall proceed to consider whether ECC has made a promise that reasonably induced JMAV's reliance, to its detriment. *See Plesha*, 725 F. Supp. 2d at 111-12.

ECC argues that JMAV's promissory estoppel claim fails because ECC did not make any promises to JMAV. ECC's Mot. at 28. ECC amplifies the argument in its Reply by asserting that only a "direct" promise from ECC to JMAV counts. ECC Reply at 12. But ECC has evidently manufactured that notion, as it cites no case law in support (or in opposition). In the Court's view, both parties miss key language, among the thicket of documents, that could be construed as a promise to JMAV, whether or not that promise is "direct." The "Review and Approval" page of the EHASP provides that "[t]he undersigned," which includes at least ECC, "agree to abide by the safety and health requirements and procedures outlined in this document." EHASP at 3. Those requirements and procedures would seem to include ECC's commitment to monitor air using a PID "as [excavation] work progresses." EHASP at 19. The finder of fact could reasonably understand this as a promise on the part of ECC, notwithstanding any obligations JMAV also had to monitor site safety. And while those to whom ECC's purported promise is directed may include

the Owner and D.C. officials, for whom the EHASP was "prepared" and to whom it was "submitted," respectively, the finder of fact could also determine that promisees include other signatories to the EHASP that likewise are agreeing to abide by the document.  *See* EHASP at 1 (cover page referring to Owner and D.C. officials). The record lacks any firm indication that JMAV signed a copy of the EHASP, but the document suggests that it has been reviewed by Strittmatter and therefore likely by JMAV as well.  *See id.* (indicating that "[t]his document has been reviewed by the undersigned representatives of companies performing earthwork, excavation, . . .  and related development activities" on site).

The Court need not reach the questions of whether any promise by ECC reasonably induced reliance, and whether JMAV so relied, to its detriment.  Genuine disputes of material fact remain as to the evidence of a promise that preclude a ruling at this stage in ECC's favor.

#### 4.   *Common Law Contribution and Indemnity*

ECC also moves for summary judgment as to JMAV's and Strittmatter's claims for "common-law contribution and indemnification,"[13] arguing only that "[o]nce the direct claims against ECC are dismissed, so too are these derivative claims."  ECC's Mot. at 33 n.7.  ECC's summary treatment of these claims is belied by the Court's discussion above.  Because the Court has denied ECC's motion as to the "direct" claims, so it shall deny the motion in this respect for lack of any affirmative argument on the part of ECC.

### B.  Strittmatter's Motion for Summary Judgment

Strittmatter seeks a favorable ruling on other parties' claims of negligence and negligent misrepresentation (alleged by ECC), breach of contract (JMAV), common law indemnity (ECC

---

[13] With regarding to indemnity, JMAV seeks from ECC "express and/or implied indemnification." JMAV's Answer to ECC's Crosscl. and Crosscl. Against ECC, ECF No. 107, ¶ 44.  The Court need not explore that distinction here.

and JMAV), contribution (ECC), and contractual indemnity (JMAV). With the exception of ECC's counterclaim for contribution, Strittmatter has not carried its burden as to any of these claims.

### 1. District of Columbia Worker Compensation Act

At the threshold, the Court shall address Strittmatter's argument that certain claims against it are prohibited under the District of Columbia Worker Compensation Act, D.C. Code §§ 32-1501, *et seq.* (hereinafter, the "WCA"). *See* Strittmatter's Mot. at 2.[14] Strittmatter argues specifically that the WCA prevents JMAV and ECC from recovering for their common law indemnity claims, ECC from recovering for its contribution claim, and ECC from recovering for its negligence and negligent misrepresentation claims, these last two of which, Strittmatter avers, are "merely common law indemnity claims masquerading as negligence claims." *Id.* at 2, 21-22. ECC appropriately points out that Strittmatter has not cited any authority that supports this notion that the negligence and negligent misrepresentation claims are thus converted simply because "ECC is seeking recovery for those damages it might be required to pay to Mr. Parker." ECC's Opp'n to Strittmatter's Mot. at 3 n.2. Strittmatter's citation of *Hinton* goes nowhere, for the pertinent language in that case simply recites the uncontroverted definition of an indemnity claim. *See* Strittmatter's Mot. at 17 (citing *Hinton v. Combined Sys., Inc.*, 105 F. Supp. 3d 16, 24-25 (D.D.C. 2015) (Kollar-Kotelly, J.)); Strittmatter's Reply at 10 n.2 (same). Accordingly, the Court shall separately analyze each of the claims alleged against Strittmatter, provided that such claims are not independently prohibited by the WCA. It is to that first issue, namely the scope of the WCA exclusivity provision, that the Court shall now turn.

---

[14] Strittmatter incorrectly refers to the WCA where it was formerly codified, at D.C. Code §§ 36-301, *et seq.*

Previously, the Court rejected Strittmatter's argument that it necessarily would be futile, under the WCA, for ECC to bring its negligence, negligent misrepresentation, and common law indemnity and contribution claims against Strittmatter. *See Parker IV*, 249 F. Supp. 3d at 512-13. In permitting ECC to amend its answer to add these counterclaims against Strittmatter, the Court recognized that, as a general matter, the WCA sharply curtails third-party efforts to recover from the employer of the plaintiff-employee:

> The liability of an employer . . . [under the workers' compensation provision] shall be exclusive and in place of all liability of such employer to the employee, his legal representative, spouse or domestic partner, parents, dependents, next of kin, and anyone otherwise entitled to recover damages from such employer at law on account of . . . [the employee's] injury or death.

*Id.* at 512 (quoting D.C. Code § 32-1504(a)) (alteration in original). Focusing on the viability of the common law indemnity claim, the Court recognized that the D.C. Court of Appeals has made some exceptions to the plain language prohibition in the WCA, permitting implied indemnity "when the indemnity claim rests on an independent duty the employer owes to the third party arising out of a 'special relationship' between them, but not a relationship arising merely 'on account of' the employee's accident." *Id.* at 513 (quoting *Howard Univ. v. Good Food Servs., Inc.*, 608 A.2d 116, 123-24 (D.C. 1992)); *see also Myco, Inc. v. Super Concrete Co., Inc.*, 565 A.2d 293, 299 (D.C. 1989). ECC's allegations that Strittmatter (and JMAV) had certain duties to ECC on the project site—independent of the incident in which Mr. Parker was injured—were sufficient to permit amendment of the answer under the liberal standard in that posture. *See Parker IV*, 249 F. Supp. 3d at 513 (citing *Howard Univ.*, 608 A.2d at 124); *id.* at 512 (discussing liberal standard for amendment).

The Court likewise dealt with the WCA hurdle when it granted JMAV's motion to file an amended third-party complaint, which added, *inter alia*, JMAV's common law indemnity claim against Strittmatter. *See id.* at 513-14. JMAV too had alleged that Strittmatter had duties

independent of Mr. Parker's incident that could support a finding of "special and ongoing relationship," here between the general contractor and subcontractor. *Id.* at 514-15 (citing *Howard Univ.*, 608 A.2d at 123-24).

The Court shall deal further below with whether Strittmatter has carried its burden, at the summary judgment stage, as to ECC's and JMAV's common law indemnity claims. It suffices here to recognize that the WCA's exclusivity provision is not a *per se* bar to those claims. Rather, the Court shall need to evaluate whether Strittmatter has a special relationship with ECC and JMAV that could bring their claims within the exception recognized in this jurisdiction for instances in which an employer has independent duties grounded in a special relationship with third parties. *See Howard Univ.*, 608 A.2d at 123-24.

In its prior discussion of the WCA, this Court did not directly and expressly address the effect of the WCA on ECC's claims for contribution and for negligence and negligent misrepresentation, or on JMAV's claims for breach of contract and contractual indemnity. It is important at this stage, however, to distinguish between third parties' efforts to recover from an employer under a common law indemnity theory and those efforts to do so under other theories. The case law in this jurisdiction that permits recovery against an employer—otherwise protected under the WCA—when the parties have a "special relationship," appears to have been developed primarily for situations in which a party seeks indemnity from the employer at common law. *See generally, e.g.*, *Howard Univ.*, 608 A.2d 116; *Myco, Inc.*, 565 A.2d 293. But the WCA case law does indicate how to handle a couple of the other claims that ECC and JMAV bring against Strittmatter.

The Court finds that ECC's effort to obtain contribution at common law fails as a matter of law. "Contribution is based on the principle that a party who discharges a liability shared with

another should not bear the sole obligation for payment." *Hinton*, 105 F. Supp. 3d at 23 (quoting *George Washington Univ. v. Bier*, 946 A.2d 372, 375 (D.C. 2008)) (internal quotation marks omitted). "The right of contribution does not arise without a finding that the party seeking contribution is a joint tortfeasor along with the party from whom contribution is sought." *Id.* (quoting *Paul v. Bier*, 758 A.2d 40, 46 (D.C. 2000)) (internal quotation marks omitted). The D.C. Court of Appeals has recognized that "the exclusivity provision of the workers' compensation statute bars an action for contribution" against the employer. *Myco, Inc.*, 565 A.2d at 297 & n.12; *see also Hinton*, 105 F. Supp. 3d at 24 (drawing same conclusion). Contribution claims are not subject to the same limited exceptions to the WCA bar that are available for indemnity claims. *Myco, Inc.*, 565 A.2d at 297. Accordingly, the Court shall grant summary judgment to Strittmatter as to ECC's contribution claim.[15]

On the other hand, JMAV's claim for contractual indemnity against Strittmatter is *not* barred by the exclusivity provision. Strittmatter does not allege that the exclusivity provision so operates, but the Court addresses it here in the interest of completeness. In *Myco*, the D.C. Court of Appeals recognized that a contractual indemnity claim falls outside the scope of claims prohibited under the WCA because, in the event of a contractual indemnity provision:

> the duty involved is one voluntarily accepted by the employer and existing separate and apart from either of the parties' relationships with the injured employee. Consequently, the duty is not one which arises "on account of" the employee's injury and thus is not covered by the statute.

*Id.* (referring to this instance as "express indemnity"). Below the Court shall consider the merits of the contractual indemnity claim.

---

[15] The Court need not reach the issue of whether Strittmatter's own claim against ECC for contribution concedes that Strittmatter is a joint tortfeasor with ECC. *See* ECC's Opp'n to Strittmatter's Mot. at 11; Strittmatter's Reply at 11 n.3.

The Court is left to determine the effects of the WCA's exclusivity provision on ECC's negligence and negligent misrepresentation claims and JMAV's breach of contract claim. Strittmatter does not cite any authority—aside from the plain text of the WCA's exclusivity provision—in support of its argument that ECC's negligence and negligent misrepresentation claims are barred by that provision. *See* Strittmatter's Mot. at 22; Strittmatter's Reply at 10-11. Strittmatter does not argue that JMAV's breach of contract claim is barred by the exclusivity provision. Accordingly, the Court shall proceed to consider the merits of the negligence, negligent misrepresentation, and breach of contract claims. In any event, the Court is of the view that the WCA exclusivity provision does not bar these claims against Strittmatter, for the same reasons that actions for contractual indemnity are not so barred. JMAV's breach of contract claim, like its contractual indemnity claim, should survive the WCA exclusivity bar because Strittmatter shouldered certain duties voluntarily upon entering into contract with JMAV, and those duties exist "apart from either of the parties' relationships with the injured employee." *Myco, Inc.*, 565 A.2d at 297. ECC's negligence and negligent misrepresentation claims likewise should not be considered barred by the WCA exclusivity provision, for the duties—if any—undergirding these claims were "voluntarily accepted by" Strittmatter as part of its role on the project site and "exist[ ] separate and apart from either of the parties' relationships with" Mr. Parker. *Id.*

The Court now turns to the merits of claims against Strittmatter that are not barred by the WCA.

### 2. *Negligence and Negligent Misrepresentation Claims*

Strittmatter argues that ECC's negligence and negligent misrepresentation claims alike fail for one reason: Strittmatter lacked "any duty" to ECC. Strittmatter's Mot. at 19. But Strittmatter is unable to carry its burden as to either claim.

As with ECC's motion, the Court shall again apply the Second Restatement's standard for third-party liability on a negligence claim. The Court considers whether Strittmatter "under[took], gratuitously or for consideration, to render services to another which [it] should [have] recognize[d] as necessary for the protection of a third person or his things." *Presley*, 25 A.3d at 889 (quoting Restatement (Second) of Torts § 324A). Strittmatter may have committed to perform certain services at the job site under its agreement with JMAV that bear on whether Strittmatter is liable to third party ECC for a "failure to exercise reasonable care" with respect to those services. *Id.* (quoting Restatement (Second) of Torts § 324A). And indeed the record contains evidence that could support such a finding.

As ECC observes, the JMAV/Strittmatter Agreement deems Strittmatter's "coordination and cooperation" with third parties on site to be an "essential term" under that agreement:

> Subcontractor shall *coordinate and cooperate in all respects*, during every phase of Subcontractor's performance of the Work, with Owner, Contractor, Architect, other Subcontractors, and any public authority or *third party who may be employed or engaged in activity on or near the site in relation to the Project.* Subcontractor recognizes and acknowledges that *its coordination and cooperation obligations are essential terms of the Subcontract.* Subcontractor acknowledges that the project is in a congested site and agrees to work in close coordination with other trades in order to maintain all schedules and phases of work.

JMAV/Strittmatter Agreement at 19 (Ex. B) (emphasis added); *see* ECC's Opp'n to Strittmatter's Mot. at 4. Strittmatter concedes that it "was responsible . . . for coordinating [its] work [e.g., of "digging holes"] with others onsite." Strittmatter's Reply at 10. But Strittmatter seems to dispute the full implications of the JMAV/Strittmatter Agreement language when Strittmatter asserts that "[t]he Subcontract does not require Strittmatter to perform any work related to environmental controls at the site *nor does it require any specific communications with or obligations to ECC.*" Strittmatter's Statement of Undisputed Material Facts, ECF No. 121-2, ¶ 16 (emphasis added). Whatever specific communications the JMAV/Strittmatter Agreement may have required, or not

required, Strittmatter does not dispute that it had "daily on-site conversations" with JMAV and ECC representatives as to "where the work would occur each day, so ECC could coordinate its work at the Apollo jobsite." Strittmatter's Resp. to Statements of Undisputed Material Facts Submitted by JMAV and ECC, ECF No. 124-2, ¶ 53 (Resp. to ECC's Statement of Undisputed Material Facts); *see also id.* ¶¶ 54-55 (indicating that these conversations would "direct[ ]" ECC as to excavation location).[16] Based on the foregoing evidence, the finder of fact could conclude that Strittmatter had a duty to inform ECC as to the location of that excavation, and that this duty entailed informing ECC as part of these daily conversations. Strittmatter does not proceed further than its argument that it had no duty. The Court need not either. The Court finds that Strittmatter has not met its burden to establish that it is entitled to judgment as a matter of law on ECC's negligence claim based on undisputed material facts.

Strittmatter's efforts to defend against ECC's negligent misrepresentation claim also fail. In arguing that it has no duty to ECC, Strittmatter evidently attempts to prove that the second prong of the negligent misrepresentation test cannot be satisfied. *See Regan*, 134 F. Supp. 3d at 37-38 ("the [false] statement or omission was in violation of *a duty to exercise reasonable care*" (emphasis added)). The Court already has found that Strittmatter did not discharge its burden to show that undisputed material facts clear Strittmatter of any duty to ECC. Because the finder of fact could determine that Strittmatter did have certain duties, the breach of which could result in tort liability to ECC, the Court does not proceed further in its analysis of ECC's negligent

---

[16] In the Court's view, it is of no consequence that Strittmatter's agreement with these material facts occurs in the context of its response to ECC's motion, rather than briefing associated with Strittmatter's motion. ECC's opposition to Strittmatter's motion relies on ECC's assertion of material facts in support of ECC's own motion. *See* ECC's Opp'n to Strittmatter's Mot. at 5-6. Strittmatter does not express any objection to this approach to the briefing. *See generally* Strittmatter's Reply at 7-10.

misrepresentation claim. Strittmatter is unable at this time to prevail in its attempt to obtain summary judgment as to that negligent misrepresentation claim.

### 3. Breach of Contract

Strittmatter challenges JMAV's breach of contract claim as nothing more than a re-styled indemnity claim, and accordingly defends only on that basis. *See* Strittmatter's Mot. at 7. But Strittmatter cites no authority for this position. JMAV, in turn, responds to Strittmatter's motion by discussing only indemnity issues. *See generally* JMAV's Opp'n to Strittmatter's Mot. Yet, the Court is unpersuaded that JMAV's breach of contract claim should simply be lumped together with its indemnity claim.

In order to prove that it did not breach its contract with JMAV, Strittmatter's defense should include a showing that it lacked relevant contractual obligations to JMAV, or, if it concedes such obligations, that Strittmatter did not breach them. *Cf. Winston & Strawn LLP v. Law Firm of John Arthur Eaves*, 47 F. Supp. 3d 68, 75 (D.D.C. 2014) (quoting *Window Specialists, Inc. v. Forney Enter., Inc.*, 26 F. Supp. 3d 52, 57-58 (D.D.C. 2014) (indicating that a plausible breach of contract claim "allege[s] that a contract existed, that [the complainant] performed his contractual obligations, that the other party breached the contract, and that [the complainant] suffered damages due to the breach")). Under the Court's foregoing analysis, the finder of fact could determine that Strittmatter did have relevant obligations to JMAV under the JMAV/Strittmatter Agreement. A breach of Strittmatter's safety obligations under the Site-Specific Plan could support JMAV's breach of contract claim. Because Strittmatter has not proven that it lacks duties to JMAV under their contract, the Court shall not proceed at this time to consider whether Strittmatter breached those duties. The Court consequently cannot conclude that Strittmatter is entitled to summary

judgment as a matter of law on JMAV's breach of contract claim based on undisputed material facts.

### 4. Common Law Indemnity

The Court returns to the issue of whether Strittmatter can prevail as to JMAV's and ECC's common law indemnity claims, notwithstanding the Court's finding above that they are not barred *per se* by the WCA.

"Indemnity is a common law remedy which shifts a monetary loss from one compelled to pay it to another whom equity dictates should bear it instead." *Myco, Inc.*, 565 A.2d at 297. "A right to indemnity may either be express, arising out of a written agreement, or implied, arising out of a relationship between the parties." *Id.* "Where there is no express contract provision, an obligation to indemnify may be implied in fact on an implied contract theory or implied in law in order to achieve equitable results." *Quadrangle Dev. Corp. v. Otis Elevator Co.*, 748 A.2d 432, 435 (D.C. 2000) (citing *E. Penn Mfg. Co. v. Pineda*, 578 A.2d 1113, 1127 n. 20 (D.C. 1990)). "In 'implied in law,' or 'equitable' indemnity, 'the obligation is based on variations in the relative degrees of fault of joint tortfeasors, and the assumption that when the parties are not *in pari delicto*, the traditional view that no wrongdoer may recover from another may compel inequitable and harsh results.'" *Id.* (quoting *E. Penn Mfg. Co.*, 578 A.2d at 1127 n. 20). "A duty to indemnify may also be implied 'out of a relationship between the parties,' to prevent a result 'which is regarded as unjust or unsatisfactory.'" *Id.* (quoting *Myco, Inc.*, 565 A.2d at 297). The latter theory of implied indemnity, termed implied-in-fact or implied contractual indemnity, "is based on the well-established theory that if one breaches a duty owed to another and the breach causes injury, the former should compensate the latter." *Myco, Inc.*, 565 A.2d at 298. To establish a right to implied-in-fact indemnity, "'the obligation must arise out of a specific duty of defined nature—

separate from the injury to the [plaintiff]—owed to the third party . . . . ,' and there must also be a special legal relationship between the tortfeasors." *Quadrangle Dev. Corp.*, 748 A.2d at 435 (quoting *Myco, Inc.*, 565 A.2d at 299) (alteration in original). The Court considers these three bases for indemnity—express, implied-in-law, and implied-in-fact—in turn.

At the threshold, Strittmatter argues that the presence of a contractual indemnity provision between JMAV and Strittmatter bars JMAV from recovering on a common law indemnity claim. Strittmatter's Mot. at 8-9. But, as JMAV points out, this construction would seem to ignore contractual language that expressly contemplates permitting common law indemnity claims to proceed. *See* JMAV's Opp'n to Strittmatter's Mot. at 14-15; JMAV/Strittmatter Agreement at 10 ("Such obligation [of contractual indemnity] shall not be construed to negate, or abridge, or otherwise reduce any other right or obligation of indemnity which would otherwise exist as to any party or person described in this Paragraph 11.11."). Strittmatter does not respond to this citation of pertinent contractual language. Absent a reason to do so, this Court shall not adopt a construction of contractual language, agreed upon by the parties, that would seem to "render the provision meaningless." *Princemont Constr. Corp. v. Baltimore & Ohio R.R. Co.*, 131 A.2d 877, 878 (D.C. 1957). The Court shall consider the contractual indemnity language further when the Court specifically addresses JMAV's contractual indemnity claim below. In the meantime, JMAV's common law indemnity claim shall not be barred on this basis.

As third parties to the employer-employee relationship, JMAV and ECC can recover on their common law indemnity claims against Strittmatter only if their claims fit within an exception to the WCA. The Court agrees with Strittmatter and ECC—JMAV does not comment—that the District of Columbia does not employ the active/passive theory of implied-in-law indemnity. *See Hinton*, 105 F. Supp. 3d at 27 (citing *Quadrangle Dev. Corp.*, 748 A.2d at 436 n.5); Strittmatter's

Mot. at 10-11; ECC's Opp'n to Strittmatter's Mot. at 7 n.4. This Court has observed on another occasion that it is "unclear what remains of implied-in-law indemnity under D.C. law." *Hinton*, 105 F. Supp. 3d at 27 (citing *Myco, Inc.*, 565 A.2d at 297-98). It remains unnecessary to consider implied-in-law indemnity any further, however, as Strittmatter challenges JMAV's and ECC's implied indemnity claims on purely implied-in-fact grounds. *See* Strittmatter's Mot. at 9-10. It is only if Strittmatter owed "a specific duty of defined nature" to JMAV and to ECC, independent of the incident giving rise to this case, and had a "special legal relationship" with each of them, that JMAV and ECC, respectively, would be able to prevail against Strittmatter on an implied-in-fact theory of indemnity. *Quadrangle Dev. Corp.*, 748 A.2d at 435 (quoting *Myco, Inc.*, 565 A.2d at 299). The Court accordingly considers whether Strittmatter has carried its burden to prove that it had no such duty, and no such relationship, with either JMAV or ECC.

Strittmatter argues that it lacked an independent duty to JMAV and ECC that could give rise to implied-in-fact indemnity. Strittmatter's Mot. at 9-10. But based on the JMAV/Strittmatter Agreement and the parties' daily conversations at the project site, the Court has already determined above that the finder of fact could discern that Strittmatter had a duty to inform ECC as to where excavation would be occurring each day. The finder of fact likewise could determine that the same contractual language and on-site conversations support a duty to inform JMAV. The "coordination and cooperation" clause in the JMAV/Strittmatter Agreement expressly applied to Strittmatter's interaction with JMAV, defined as the "Contractor," just as it also expressly applied to third parties on site such as ECC. *See* JMAV/Strittmatter Agreement at 19 (Ex. B). Moreover, the daily coordination meetings—suggesting at least one means by which contractual coordination was to take place—included JMAV. *See* Strittmatter's Resp. to Statements of Undisputed Material Facts Submitted by JMAV and ECC, ECF No. 124-2, ¶ 53 (Resp. to ECC's Statement of Undisputed

Material Facts).  While JMAV would not be using information from Strittmatter in order to determine where to take air measurements, the finder of fact could determine that JMAV could use this information as part of its "overall responsibility" to ensure site safety.  EHASP at 7.

Because the finder of fact could discern that Strittmatter owed duties to JMAV and ECC, independent of the incident involving Mr. Parker, the Court need not reach the issue of Strittmatter's special relationship with JMAV and ECC.  The Court finds that genuine disputes of material fact regarding Strittmatter's duties preclude Strittmatter from obtaining summary judgment as to JMAV's and ECC's common law indemnity claims.

### 5. *Contractual Indemnity*

Strittmatter also seeks summary judgment as to JMAV's contractual indemnity claim, which the Court determined above is not barred by the WCA's exclusivity provision.  JMAV's claim is based on the following language in the JMAV/Strittmatter Agreement:

> To the fullest extent permitted by the law of the District of Columbia, the Subcontractor [Strittmatter] shall indemnify and hold harmless the Owner, the Architect and the Contractor [JMAV] and all of their agents and employees from and against all claims, damages, losses and expenses, including but not limited to attorney's fees, caused by, arising out of, in connection with, or resulting from the performance of the Subcontractor's Work under this Subcontract, where any such claim, damage, loss or expense is attributable to bodily injury, sickness, disease, or death, or to injury to or destruction of tangible property including the loss of use resulting therefrom, and is caused by or arises in whole or in part, from any negligent or non-negligent act or omission of the Subcontractor or any of its agents, employees, sub-subcontractors or others . . . .

JMAV/Strittmatter Agreement at 10 (Art. 11.11.1).  In the Court's decision denying JMAV's first motion for partial summary judgment, which the Court expressly incorporates herein, the Court determined whether the contract was ambiguous as a matter of law such that discovery would be necessary to fill the gap.  *See Parker I*, 189 F. Supp. 3d at 42-44.  Under District of Columbia

law,[17] "[a]n ambiguity exists when, to a reasonably prudent person, the language used in the contract is susceptible of more than one meaning, and the court determines that proper interpretation of the contract depends upon evidence outside the contract itself, i.e., where its interpretation depends upon the credibility of extrinsic evidence or upon a choice of reasonable inferences from such evidence." *Id.* at 43 (quoting *Aziken v. District of Columbia*, 70 A.3d 213, 219 (D.C. 2013)) (internal quotation marks omitted). "An indemnity provision . . . should not be construed to permit an indemnitee to recover for his [or her] own negligence unless the court is firmly convinced that such an interpretation reflects the intention of the parties." *Id.* (quoting *W.M. Schlosser Co., Inc. v. Maryland Drywall Co.*, 673 A.2d 647, 653 (D.C. 1996)) (first alteration added) (internal quotation marks omitted). The Court found ambiguity as a matter of law regarding whether the contractual language reflects an intention for Strittmatter to indemnify JMAV for JMAV's own negligence, if any. *See Parker I*, 189 F. Supp. 3d at 46-48. The Court rejected JMAV's remaining efforts to persuade the Court that certain language in the indemnity provision—namely the "arising" language in the middle of that provision, and the "or others" language at the end—clarified the parties' intention. *Id.* at 47-48.[18]

Now in Strittmatter's motion for summary judgment on JMAV's claim, Strittmatter argues that the Court's first ruling precludes a finding that Strittmatter is contractually obligated to indemnify JMAV. *See* Strittmatter's Mot. at 5-8. Strittmatter's interpretation is incorrect. The

---

[17] The JMAV/Strittmatter Agreement provides for its interpretation "in accordance with the laws of the District of Columbia, without reference to its choice of law." JMAV/Strittmatter Agreement at 13 (Art. 13.3).

[18] Because the D.C. Court of Appeals in *Schlosser* has indicated that a trial court applying D.C. law should be firmly convinced of the parties' intention to permit indemnification of a negligent indemnitee, at the summary judgment stage the Court does not resort to several other tools for resolving a contractual ambiguity, such as finding against the drafter or plugging a gap in the parties' foresight with the Court's own reasonable interpretation. *See Aziken*, 70 A.3d at 223 & n.13.

issue is instead whether discovery has cleared up the ambiguity in the contractual language. Strittmatter has not cited any evidence in the record to resolve that ambiguity. Accordingly, the Court finds that Strittmatter has not carried its burden to prove that it is entitled to judgment as a matter of law on JMAV's contractual indemnity claim based on undisputed material facts.

## C. JMAV's Motion for Partial Summary Judgment

As the Court has discussed, JMAV previously sought partial summary judgment as to the contractual indemnity claim in Count I of its Third-Party Complaint against Strittmatter, which the Court denied. *Parker I*, 189 F. Supp. 3d at 40. Now that discovery has closed, JMAV again seeks partial summary judgment, this time as to both its contractual indemnity claim and its breach of contract claim in Counts I and II, respectively, of its Amended Third-Party Complaint against Strittmatter. JMAV's Mot. at 7-8. JMAV does not move as to its claim for common law indemnity. *See id.*

At the threshold, the Court reiterates its finding above that neither JMAV's contractual indemnity claim nor its breach of contract claim is barred by the WCA's exclusivity provision. But, for the reasons that follow, JMAV is unable to carry its burden as to either its contractual indemnity claim or its breach of contract claim.

### 1. *Contractual Indemnity*

The Court found above that Strittmatter did not discharge its burden to show that ambiguity in the JMAV/Strittmatter Agreement's indemnity provision could be resolved in its favor based on facts presently in the record. The Court now finds that JMAV similarly has failed to cite any evidence that was not before the Court in *Parker I* to show that JMAV and Strittmatter intended the indemnity provision to cover JMAV's own negligence, if any. JMAV attempts instead to basically re-open the entirety of the Court's *Parker I* decision, urging again that the law supports

its reading of the contractual language, as well as arguing that Strittmatter's and Mr. Parker's alleged negligence require Strittmatter to indemnify JMAV. *See generally* JMAV's Mot. (focusing on Strittmatter's and Mr. Parker's actions); JMAV's Reply (focusing on contractual interpretation and Strittmatter's actions). JMAV did not seek reconsideration of the Court's decision in *Parker I*, and the Court sees no reason now to revisit its prior finding that the contractual language was ambiguous.

JMAV's various arguments do not answer the question that remains, namely whether any evidence from outside of the contract can clarify whether the parties intended that JMAV could recover regardless of its negligence.[19] The D.C. Court of Appeals decision in *Schlosser* precludes a finding that JMAV can recover for its own negligence unless this Court is "firmly convinced" that JMAV and Strittmatter so intended in their indemnity provision. *W.M. Schlosser Co., Inc.*, 673 A.2d at 653. Expecting proof that the parties so intended is consistent with the parties' agreement to require indemnity "[t]o the fullest extent permitted by the law of the District of Columbia." JMAV/Strittmatter Agreement at 10; *cf.* JMAV's Reply at 3-5 (urging Court's recognition of "fullest extent" language). The Court finds that JMAV has not proven that it is entitled to judgment as a matter of law as to its contractual indemnity claim against Strittmatter based on undisputed material facts.

---

[19] The Court disagrees with JMAV's argument that a certain D.C. Court of Appeals decision is evidence of "customs and norms regarding allocation of risk on construction sites in the District of Columbia." JMAV's Reply at 2 (citing *Steele Founds., Inc. v. Clark Constr. Grp., Inc.*, 937 A.2d 148, 155 (D.C. 2007)). The cited portion of *Steele Foundations* interprets the indemnity provision at issue in that case but does not purport to discern general customs or norms in this jurisdiction regarding parties' negotiation of indemnity provisions. *See Steele Founds., Inc.*, 937 A.2d at 155. In any event, the Court is not persuaded that this, or anything else in the Reply, furnishes evidence of the parties' intention that Strittmatter's indemnity obligation cover JMAV's own negligence, if any.

## 2. Breach of Contract

JMAV also seeks to recover for the alleged breach of Strittmatter's obligations under the JMAV/Strittmatter Agreement. JMAV's Mot. at 18-19. Strittmatter's opposition is limited to arguing that JMAV's breach of contract claim is effectively a recycled contractual indemnity claim. *See* Strittmatter's Opp'n to JMAV's and ECC's Mots. at 13. The Court has elsewhere rejected Strittmatter's attempt to lump ECC's negligence and negligent misrepresentation claims into its common law indemnity claim, in part for lack of authority supporting that notion. Here again, Strittmatter offers no authority for its assertion—in essence—that JMAV cannot separately pursue both contractual indemnity and breach of contract claims against Strittmatter springing from the injury to Mr. Parker.

In evaluating Strittmatter's motion for summary judgment as to JMAV's breach of contract claim, the Court found that Strittmatter failed to establish that it lacked contractual obligations to JMAV, and accordingly the Court declined to reach the issue of whether Strittmatter breached any such duties. Now that JMAV has the burden, the Court agrees that the record could support a finding that Strittmatter had certain safety obligations under the JMAV/Strittmatter Agreement. *See* JMAV's Mot. at 18-19 (arguing that those obligations included training employees). For example, "Subcontractor Foremen" were required to "train their employees to perform their work in a safe manner and to recognize and correct potential and actual hazards and unsafe acts." JMAV/Strittmatter Agreement at 52 (Ex. D). Accordingly, the Court proceeds to consider whether Strittmatter breached those obligations.

JMAV argues that Strittmatter "failed to provide [Mr. Parker with] any information about the existence, safe handling, or excavation of contaminated soil on the Apollo Project." JMAV's Mot. at 18-19 (citing Statement of Material Facts Not in Genuine Dispute, ECF No. 123-2

("JMAV's Statement"), ¶¶ 31, 43).  Strittmatter denies JMAV's assertions of undisputed material

fact, arguing that "Mr. Abel specifically testified that he spoke to Mr. Parker about the job he was

to do on the Apollo work site and that Mr. Parker should have received further orientation and

training from [JMAV]."  Strittmatter's Resp. to Statements of Undisputed Material Facts

Submitted by JMAV and ECC, ECF No. 124-2, ¶ 31 (Resp. to Moriarity's [sic] Statement of

Undisputed Material Facts) (citing Dep. of Richard Abel at 12:16-21, 13:11-18, JMAV's Ex. 17,

ECF No. 123-21); *see also id.* ¶ 43 (referring to response to ¶ 31).  Strittmatter refers in support to

portions of the Strittmatter foreman's deposition that are not in evidence.  *See* Dep. of Richard

Abel, JMAV's Ex. 17, ECF No. 123-21 (not containing 12:16-21, 13:11-18).  Absent record

evidence to support Strittmatter's position, the Court would be led to conclude that JMAV had

carried its burden.

Upon examination of JMAV's evidence for its so-called undisputed facts, however, the

Court is not persuaded that summary judgment is warranted.  JMAV refers to the deposition

testimony of Mr. Parker and of Strittmatter's corporate designee.  JMAV's Statement ¶ 31 (citing

Dep. of J. Parker at 160:14-16, JMAV's Ex. 11, ECF No. 123-15; Dep. of C.R. Strittmatter at 49:3-

52:9, JMAV's Ex. 10B, ECF No. 123-13).  In particular, JMAV cites the following exchange in a

deposition of Mr. Parker:

> Q . . . . When you got to the Apollo job site, what did Strittmatter tell you about
> the job site?
>
> A  Nothing.

Dep. of J. Parker at 160:14-16, JMAV's Ex. 11, ECF No. 123-15.  The cited deposition testimony

of Strittmatter's designee is longer and covers several topics, but it likewise involves questioning

as to "what specifically . . . Mr. Parker [was told] when he first got to this jobsite."  Dep. of C.R.

Strittmatter at 49:3-52:9, JMAV's Ex. 10B, ECF No. 123-13.  That designee indicates that Mr.

Parker was told about "the potential of underground tanks." *Id.* at 52:2-5. The Court is not permitted in this posture to assess the credibility of this testimony or weigh the evidence. *See Anderson*, 477 U.S. at 255. But analyzing that evidence in the light most favorable to non-movant Strittmatter, the Court finds that it is "susceptible to divergent inferences," and accordingly that it cannot support a finding that material facts are not in dispute. *Moore*, 571 F.3d at 66 (quoting *Kuo-Yun Tao v. Freeh*, 27 F.3d at 638) (internal quotation marks omitted); *see also Anderson*, 477 U.S. at 255. JMAV has not discharged its burden to prove that it is entitled to summary judgment against Strittmatter as to JMAV's breach of contract claim based on undisputed material facts.

## IV. CONCLUSION

For the foregoing reasons, the Court shall **GRANT-IN-PART and DENY-IN-PART** Strittmatter's [121] Motion for Summary Judgment, **DENY** ECC's [122] Motion for Summary Judgment, and **DENY** JMAV's [123] Motion for Summary Judgment on Count I and II of Its Amended Third Party Complaint.

Strittmatter's [121] Motion is granted only insofar as it seeks summary judgment as to ECC's counterclaim for contribution. ECC's counterclaim against Strittmatter for contribution is accordingly **DISMISSED**.

An appropriate Order accompanies this Memorandum Opinion.

Dated: September 12, 2018

_____/s/_____
COLLEEN KOLLAR-KOTELLY
United States District Judge
